**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                                        :

**In re:**                                           :     Chapter 11

**MOUNT VERNON MONETARY**      :     Case No. 10-23053 (RDD)
**MANAGEMENT CORP.,** *et al.,*          :
                                                   :     Jointly Administered
                         **Debtors.**      :
----------------------------------------------------------------x

## ORDER (I) AUTHORIZING SALE OF MISCELLANEOUS ASSETS, AND (II) AUTHORIZING THE CONSULTING AGREEMENT FOR LIQUIDATION OF ASSETS WITH JG RESOURCES, LLC

Upon the motion (the "**Motion**") of Mount Vernon Monetary Management Corp. ("**MVMMC**") and certain of its affiliates and related entities, as debtors and debtors in possession (collectively, the "**Debtors**"),[1] seeking entry of an order pursuant to Sections 105(a), 327(a), 328, and 363 of the Bankruptcy Code (i) authorizing the consulting agreement (the "**Agreement**")[2] between the Debtors and JG Resources, LLC (the "**Consultant**"), annexed hereto as <u>Exhibit 1</u>, and (ii) approving the sale (the "**Sale**") contemplated thereunder, all as described more fully in the Motion; and it appearing that the Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that this matter is core pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O); and it appearing that venue is proper in this district pursuant to 28 U.S.C. § 1408; and the Court having

---

[1] The Debtors are: 1540 Roosevelt Avenue, LLC; 185 LLC; 415 Huguenot LLC; 44 N. Saw Mill, LLC; American Armored Car, Ltd.; Annex Corp.; Armored Money Services, LLC; ATM Management, LLC; Barron ATM Corp.; Crystal Public Communications, Inc.; District Central Station Alarm Corp.; District Central Alarm Service Corp.; District Security Services, LLC; EZ-KI Realty Corp; EZ-RI Realty Corp.; GNC Payroll Plus, Inc.; GT Public Services, Inc. (f/k/a Public Access Networks Services Inc.); Manhattan Money Branch.com, Inc.; Michelle Corp.; MKey, LLC; Money Kiosk Corp.; Montgomery Check Cashing Corp.; Mount Vernon Monetary Management Corp.; Mount Vernon Money Center Corp. (a/k/a/ MVMC Corp.); M.V.M.C. Service Station, Inc.; MVMC Holding Corp.; MVMC Service, Inc.; MVMM Corp.; NowCash, Ltd.; Quick Cash, LLC; Time Square Payment Center, Inc.; Vet's ATM Corp.; and Zipes Equities, Ltd.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Motion or the Agreement, as applicable.

determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and all parties in interest; and upon the *Declaration of Allen D. Applbaum In Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "**Declaration**"); and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

FURTHER FOUND AND DETERMINED, AS FOLLOWS:

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), made applicable pursuant to Bankruptcy Rule 9014.

B. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C. The notice provided of the Motion and of the hearing in connection thereto was adequate and sufficient under the circumstances, and any otherwise applicable requirement for notice is hereby waived and dispensed with.

D. The Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud. Neither the Debtors nor the Consultant have engaged in any conduct that would prevent the application of Sections 363(m) of the Bankruptcy Code or implicate or cause the application of Section 363(n) of the Bankruptcy Code to the Agreement or to the consummation of the transactions contemplated thereby. Actions taken by the Consultant under the Agreement are in good faith, as that term is used in the Bankruptcy Code and applicable case law, and is entitled to the protections of Sections 363(m) and (n) of the Bankruptcy Code with respect to all of the transactions contemplated by this Order and the Agreement.

E. The consideration provided by the Consultant pursuant to the Agreement

constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and under the laws of the United States, any state or territory, possession or the District of Columbia.

F. The Sale is in the best interests of the Debtors and their creditors. Conducting the Sale at the Location will provide an efficient means for the Debtors to dispose of the Liquidation Assets.

G. The Debtors have demonstrated good cause for the relief requested in the Motion and the entry of this Order.

IT IS THEREFORE ORDERED:

1. The Motion is granted.

2. Pursuant to Section 327(a) and 328 of the Bankruptcy Code, the Debtors are authorized to retain the Consultant, effective as of the date of the filing of the petitions in these cases.

3. The terms of the Agreement are expressly approved in their entirety, as amended by this Order.

4. The Debtors and the Consultant are authorized, pursuant to Sections 105 and 363 of the Bankruptcy Code, to conduct the Sale pursuant to the terms of the Agreement, make any and all payments required by the Agreement as and when due thereunder without further order of this Court, and to sell the Liquidation Assets on an "AS IS - WHERE IS" basis, and free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including any and all "claims" as defined in Section 101(5) of the Bankruptcy Code), including, without limitation, the liens and security interests of any secured creditor, whether arising by agreement, any statute or otherwise and whether arising before, on or after the Petition Date (collectively, the "**Liens**"), with such Liens, if any, to attach to solely to the Debtors

Proceeds with the same validity, force and effect as the same had with respect to the assets at issue immediately before the closing, subject to any and all defenses, claims or counterclaims or setoffs that may exist.

5. Consultant may incur Budget Expenses up to an amount equal to one hundred ten percent (110%) of the Budget Amount (the "**Budget Excess Amount**") without the prior written consent of the Debtors, provided, however, Consultant shall not incur any Budget Expenses in excess of the Budget Excess Amount without the prior written consent of the Debtors, after notice to the Office of the United States Trustee and any official committee(s) appointed in these cases. The Office of the United States Trustee and such committee(s) shall be given seven days within which to object to any proposed increase in the Budget Excess Amount.

6. The Debtors shall provide copies of the weekly expense reports compiled by the Consultant to the Office of the United States Trustee and any official committee(s) appointed in these cases. At the conclusion of the Sale, the Consultant shall produce a report detailing the expense incurred in connection with the Sale including an itemized statement of expenditures and disbursements. For labor costs, the Consultant shall specify the days worked, the number of hours worked each day by each person and the tasks undertaken by each person as part of such report. The Office of the United States Trustee and any official committee(s) appointed in these cases shall be given seven days within which to object to the amounts paid as set forth in such report.

7. Consultant shall collect the Gross Proceeds and the Buyer's Premium from the sale of the Liquidation Assets. Consultant shall retain the Buyer's Premium as its fee, and the Buyer's Premium shall not be subject to review by any parties in interest in these cases. The Gross Proceeds from the Sale of the Liquidation Assets shall be distributed in the following order and priorities: <u>first</u>, to fully reimburse the Consultant for the Consultant Advances; <u>second</u>, to fully pay the Budget Expenses; and, <u>third</u>, the balance to the Debtors (the "**Debtors'**

**Proceeds**"). The Consultant shall be compensated by the Debtors' estates in accordance with the Agreement, the standards set forth in 11 U.S.C. § 328(a), and as set forth herein, without further order of this Court.

8. The Consultant shall not seek payment of any additional legal fees from the Debtors post-petition.

9. The transactions pursuant to the Agreement and this Order shall be binding upon and all entities including, without limitation, all landlords of the Locations,[3] filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order; and each and every federal, state, and local governmental agency or department is directed to accept this Order as sole and sufficient evidence of the transfer of title to any particular purchaser, and such agency or department shall rely upon this Order in consummating the transactions contemplated hereby.

10. Each and every federal, state or local agency, department or governmental authority with regulatory authority over the Sale and all newspapers and other advertising media in which the Sale is advertised shall consider this Order binding and shall allow the Debtors and the Consultant to consummate the transactions provided for in the Agreement without charging advertising rates in excess of the rates charged to the Debtors prior to the Petition Date, including, without limitation, the conducting and the advertising of the Sale in the manner

---

[3] The Locations are defined as any location at which the Liquidation Assets are held, including 44 N. Sawmill River Road, Elmsford, NY; 138 South Columbus Avenue, Mount Vernon, NY; 140 South Columbus Avenue, Mount Vernon, NY; 403 East Third Street, Mount Vernon, NY; 102 South Haven Avenue, Mount Vernon, NY; 1540 Roosevelt Avenue Carteret, NJ; 9A Windsor Road, Bloomfield, CT; and, any other locations of the Debtors.

contemplated by the Agreement, and no further approval, license or permits of any governmental authority shall be required; provided, however that the Debtors and the Consultant continue to be bound by and comply with the state and local public health and safety laws ("**Safety Laws**"), and tax, labor, employment, environmental and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, the "**General Laws**"), to the extent applicable.

11. If the parties or persons, including, but not limited to, landlords, subtenants, utility companies, governmental agencies (except to the extent provided otherwise in this Order), sheriffs, marshals or other public officers, creditors and all those acting for or on their behalf, believe that the cause exists to: (a) prohibit the Debtors and the Consultant from advertising the Sale in a manner that is consistent with the Agreement; (b) in any way interfere with or otherwise impede the conduct of the Sale at the Locations or the use or maintenance of all services, furniture, fixtures, equipment and other assets located at the Locations; or (c) institute any action or proceeding in any court or other administrative body, other than this Court, having as its objective the obtaining of an order or judgment against the Debtors, the Consultant or a landlord that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sale at the Locations or seek to recover damages for breach(es) of covenants or provisions in any lease or sublease based upon any relief authorized herein, this Court shall retain exclusive jurisdiction to resolve such dispute, and such parties or persons shall take no action against the Debtors, the Consultant, the landlords of the Locations or the Debtors until this Court has resolved such dispute. This Court shall hear the request of such persons or parties with respect to any such disputes on an expedited basis, a may be appropriate under the circumstances.

12. Provided that the Sale is conducted in accordance with the terms of this Order, and the Agreement, the Debtors and the Consultant shall be deemed to be in compliance

with the requirements of any applicable "going-out-of-business," "bankruptcy liquidation," or similar themed inventory liquidation sales, or bulk sale laws (each a "**GOB Law**" and together, the "**GOB Laws**").

13. The Sale shall be conducted by the Debtors and the Consultant without the necessity of compliance with any federal, state or local statute or ordinance (other than Safety Laws), lease provision or licensing requirement affecting going out of business, bankruptcy liquidation, or affecting advertising, including signs, sign walkers, banners, and posing of signage.

14. The Sale at the Locations shall be conducted by the Debtors and the Consultant notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sale, the rejection of leases, abandonment of assets or "going dark" provisions.

15. All of the transactions contemplated by the Agreement shall be protected by Bankruptcy Code section 363(m) in the event that this Order is reversed or modified on appeal.

16. The provisions of this Order shall be self-executing notwithstanding any restrictions in the Agreement on Consultant's ability to conduct the Sale in compliance with applicable laws or Leases. Unless otherwise ordered by the Bankruptcy Court, all newspapers and other advertising media in which the Sale may be advertised, and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and consultant to consummate the Agreement and to conduct the Sale at the Stores and the Locations, including conducting and advertising the Sale in accordance with the Agreement and this Order.

17. All utilities, landlords, creditors and all persons acting for or on their behalf (but not including Governmental Units (as defined in Bankruptcy Code Section 101(27)) shall not interfere with or otherwise impede the conduct of the Sale, institute any action against

the Debtors, Consultant or landlords in any court (other than in the Bankruptcy Court) or before any administrative body which in any way directly or indirectly interferes with or obstructs of otherwise impedes the conduct of the Sale. This Court shall retain exclusive jurisdiction to resolve such disputes, and such parties or persons shall take no action against the Debtors, Consultant, the landlords or the Sale until this Court has resolved such disputes. This Court shall hear the request of such persons or parties with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

18. Notwithstanding any provision in any of the Leases to the contrary, Consultant and the Debtors are hereafter permitted to conduct the Sale in accordance with the Agreement and this Order, and to take all actions reasonably related thereto or arising in connection therewith, including advertising such sales as "going-out-of-business," "bankruptcy liquidation" or similar themed sale in media advertisements, and on interior and exterior banners, sign walkers and other signage that the Debtors and the Consultant deems appropriate, without complying with any such restrictive Lease provision.

19. Except as may otherwise be specifically set forth in the Agreement, the Debtors and the Consultant are authorized and empowered to transfer the Liquidation Assets among the Locations, notwithstanding anything in applicable non-bankruptcy law to the contrary.

20. This Court shall retain exclusive jurisdiction with regard to all issues or disputes in connection with the Order and the relief provided for herein, the Agreement, any side letter entered into by and between the Consultant and any landlord, all amendments or modifications to any of the foregoing, including, without limitation, to protect the Debtors, the landlords and the Consultant from interference with the Sale, and to resolve any disputes related to the Sale or arising under the Agreement or the implementation thereof.

21. Before any sale, or transfer of company records, computers (including software) or cash registers and any other point of sale equipment (collectively, "**POS Equipment and Records**"), which may contain personally identifiable information, the Consultant shall remove or cause to be removed the personally identifiable information from the POS Equipment and Records. All costs to remove the personally identifiable information from the POS Equipment and Records shall be included as part of Other Expenses.

22. The Debtors, the Consultant and each of the Consultant's respective officers, employees and agents be, and they hereby are, authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Sale and effectuate the Agreement and the related actions set forth therein.

23. Any of the Liquidation Assets remaining in the Locations on the Sale Termination Date may be abandoned in place by Consultant, and the affected landlord may dispose of such property without liability to the Consultant or any third party.

24. This Order shall be binding on all creditors (whether known or unknown) of the Debtors, all successors and assigns of the Consultant, the Debtors, their affiliates and any or upon a conversion to Chapter 7 under the Bankruptcy Code and shall not be subject to rejection or revocation.

25. This Order shall be binding on all creditors (whether known or unknown) of the Debtors, all successors and assigns of the Consultant, the Debtors, their affiliates and any or upon a conversion to Chapter 7 under the Bankruptcy Code and shall not be subject to rejection or revocation.

26. To the extent there is a dispute arising from or relating to the Sale, this Order, the Agreement, which dispute relates to any GOB Law (a "**Reserved Dispute**"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute.

27. The requirements of Federal Rules of Bankruptcy Procedure 6003, 6004(h) and 6006(d), to the extent they would otherwise apply, are hereby waived and this Order shall be effective immediately upon entry thereof.

28. To the extent, if any, anything contained in this Order conflicts with a provision in the Agreement, this Order shall govern and control.

29. Within two (2) business days of entry of this Order, the Debtors shall serve this Order via regular mail, on: (i) the Attorney General's offices and applicable taxing authorities for each state in which the Locations are located; (ii) the local mayor or similar representative of each village or city official and the county where a Location is located, addressed to the attention of the municipal, city or county attorney (and, where appropriate to the consumer protection division of such office); (iii) the Office of the United States Trustee; (iv) the Internal Revenue Service; (v) all parties, if any, known to be asserting a lien in the Liquidation Assets; (vi) the Debtors' landlords; (vii) each of the utilities for the Locations; and (viii) the 30 largest unsecured creditors set forth in Exhibit G to the Declaration.

Dated:  White Plains, New York
         June 9, 2010                        /s/ Robert D. Drain
                                              UNITED STATES BANKRUPTCY JUDGE