**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MOUNT VERNON MONETARY MANAGEMENT CORP., *et al.*, | Case No.: 10-23053 (RDD) |
| | Jointly Administered |
| Debtors. | |

## AMENDED DISCLOSURE STATEMENT FOR JOINT PLAN OF LIQUIDATION

**GREENBERG TRAURIG, LLP**

Allen G. Kadish, Esq.
Burke A. Dunphy, Esq.
200 Park Avenue
New York, New York 10166

*Attorneys for Mount Vernon Monetary
Management Corp., et al., Debtors and
Debtors-in-Possession*

**LOWENSTEIN SANDLER, PC**

S. Jason Teele, Esq.
Sharon L. Levine, Esq.
Cassandra M. Porter, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068

*Attorneys for the Official Committee of
Unsecured Creditors*

> **PLEASE READ THE DISCLOSURE STATEMENT AND PLAN IN FULL.**
> **THE DEBTORS AND THE COMMITTEE ARE JOINT PROPONENTS OF**
> **THE PLAN AND URGE YOU TO VOTE TO ACCEPT THE PLAN.**

Dated: November 10, 2010

# TABLE OF CONTENTS

ARTICLE I.        SUMMARY OF THE PLAN ................................................................... 1

ARTICLE II.       DEBTORS' HISTORY AND BUSINESS BACKGROUND ................ 10

ARTICLE III.      SIGNIFICANT EVENTS DURING THE BANKRUPTCY ................... 13

ARTICLE IV.       FINANCIAL STATUS ......................................................................... 19

ARTICLE V.        DESCRIPTION OF THE PLAN ......................................................... 21

ARTICLE VI.       RISK FACTORS ................................................................................. 54

ARTICLE VII.      FEASIBILITY OF THE PLAN ............................................................ 55

ARTICLE VIII.     BEST INTERESTS TEST ................................................................. 56

ARTICLE IX.       TAX CONSEQUENCES .................................................................... 38

ARTICLE X.        CONCLUSION .................................................................................. 40

**Exhibits Enclosed:**                                           **Exhibit**

Amended Joint Plan of Liquidation                                  A
Liquidation Analysis                                               B

# ARTICLE I.
## SUMMARY OF THE PLAN

**Introduction.**

Mount Vernon Monetary Management Corp. ("**MVMMC**") together with its affiliated debtor entities, as debtors and debtors-in-possession (collectively, with MVMMC, the "**Debtors**"), and the Official Committee of Unsecured Creditors (the "**Committee**" and collectively with the Debtors, the "**Proponents**"), pursuant to the provisions of chapter 11 of the Bankruptcy Code, submit the following Disclosure Statement (the "**Disclosure Statement**") with respect to the Joint Plan of Liquidation for the Debtors for the resolution of the outstanding Claims against and Interests in the Debtors (as it may be further amended and modified, the "**Plan**"). Unless otherwise noted, all capitalized terms used but not defined herein have the meanings ascribed to them in the Plan.

The Proponents are soliciting votes from unsecured creditors of the Debtors for the acceptance of the Plan. Under the Plan, Allowed Administrative Expense Claims, Priority Tax Claims, Non-Tax Priority Claims, and Secured Claims are Unimpaired and will be satisfied in full. The acceptance of the Plan by Holders of these Claims is not required and the Proponents are not soliciting their votes. Holders of Customer Claims, General Unsecured Claims, and Convenience Claims are impaired under the Plan and are entitled to vote. The Proponents are asking that all holders of Customer Claims, General Unsecured Claims, and Convenience Claims vote to accept the Plan. The Plan cancels all Equity Interests in the Debtors. Holders of Equity Interests will receive no distributions under the Plan.

The Plan provides for the creation of the MVMMC Trust, into which all of the Debtors' Assets and liabilities as of the Effective Date will be transferred pursuant to the MVMMC Trust Agreement. Under the Plan, the MVMMC Trustee will consider all Customer Claims and Secured Claims, and all arguments made in support thereof, including but not limited too: (i) all Customer Claims, (ii) Secured Claims, (iii) Customer Claims that Customers assert are not property of the Estates, and (iv) Customer Claims that assert status under Class 2. The Customer

Claim Report will set forth the MVMMC Trustee's findings and analysis determining which Class 2 Customer Claims, if any, should be Allowed by the Bankruptcy Court, and which Class 2 Customer Claims, if any, should be deemed General Unsecured Claims for purposes of Distribution of MVMMC Trust Assets under the Plan. The Customer Claim Report will be Filed with the Bankruptcy Court and served upon all Creditors. All Holders of Customer Claims will have forty-five (45) days from the filing of the Customer Claim Report to file Responses thereto. Any Responses Filed will be considered at the Customer Claim Hearing. The Bankruptcy Court will enter the Allowed Customer Claim Order setting forth which Holders of Class 2 Claims will be deemed Allowed Customer Claims (Class 2) and which shall be deemed General Unsecured Claims (Class 3). The Proponents assert that this process is the most efficient and cost-effective method for determining Customer Claims as it avoids litigation while providing Holders of Customer Claims with a forum for addressing their Claims.

As described herein and in the Plan, the initial Distribution Date shall be a Business Day that is not more than thirty (30) days following the date on which both the Restitution Order and the Allowed Customer Claim Order have become Final Orders. Subsequent Distributions, if any, will be made on a periodic basis on account of Claims that become Allowed between the prior Distribution Date and the subsequent Distribution Date.

Holders of Allowed General Unsecured Claims (Class 3) against the Debtors will receive their Pro Rata share of MVMMC Trust Assets after the payment of Administrative Expense Claims, allowed Claims in Class 2 (Customer Claims) and Class 4 (Convenience Claims) net of any payments made pursuant to the Restitution Order. The following table summarizes the treatment accorded to Holders of Creditors and Interests of the Debtors under the Plan:

| Class | Description | Treatment | Entitled to Vote | Est. Amount of Allowed Claims (000) | Est. % Recovery |
|---|---|---|---|---|---|
| Unclassified Claims | Administrative Expense Claims | Payment in full. | No | $5,442 | 100% |
| | Priority Tax Claims | Payment in full. | No | $794[1] | 100% |
| 1-A | Non-Tax Priority Claims | Payment in full. | No | $203 | 100% |
| 1-B | Secured Claims | Payment in full or distribution of collateral. | No | $992[2] | 100% |
| 2 | Customer Claims | Payment of the Holder's Pro Rata interest in the MVMMC Trust Assets less any sum paid pursuant to the Restitution Order. | Yes | $56,366[3] | TBD |

---

[1]  This amount is an estimate and may change at the conclusion of the Claims Bar Date for Government Claims.

[2]  This amount does not include the alleged MoneyGram Claim (defined herein).

[3]  The Proponents estimate that the total amount of alleged Class 2 Claims is $56,365,809 as of November 8, 2010.  The actual amount of Allowed Customer Claims will be determined by the Bankruptcy Court.  If all alleged Customer Claims are determined to be Allowed Customer Claims, there is a potential that Allowed Customer Claims will not be paid in full as the total amount of alleged Customer Claims exceeds the amount of funds in the Debtors' possession, custody and control.

| | | | | | |
|---|---|---|---|---|---|
| 3 | General Unsecured Claims | Payment of the Holder's Pro Rata share of MVMMC Trust Assets less any amounts paid to such Holder pursuant to the Restitution Order. | Yes | $33,514 | TBD[4] |
| 4 | Convenience Claims | Payment of the holder's claim from the MVMMC Trust Assets, in Cash, up to $1,000. | Yes | $33[5] | 50% of allowed claim up to an amount of $1,000 |
| 5 | Equity Interests | This class will receive no distribution under the Plan and the Debtors' equity interests will be extinguished and cancelled. | No | N/A | 0% |

**Voting Procedure and Instructions.**

In accordance with section 1126(f) of the Bankruptcy Code, only Classes of Claims and Interests that are Impaired under the Plan may vote to accept or reject the Plan. Unimpaired Classes are conclusively presumed to have accepted the Plan. A Class is Impaired if the legal, equitable, or contractual rights attaching to Claims in that Class are modified other than by curing defaults and reinstating the maturity of obligations, or payment in full in Cash.

The votes of Holders of Claims in Classes 2, 3, and 4 are being solicited, and such creditors will have the opportunity to vote to accept or reject the Plan on a consolidated basis for all of the

---

[4] This estimate is subject to change as it is dependent upon the Restitution Order, the Allowed Customer Claim Order, litigation and Insurance Payments. The universe of asserted claims is not fully known at this time.

[5] This amount is an estimate and may change after at the conclusion of the Solicitation Period.

Debtors, and not on a company-by-company basis. All votes will be tabulated and counted as though the related Claims were against a single Debtor. Thus, the Customers for all of the Debtors will be classified according to the nature of their Claims and not the identity of the particular Debtor allegedly responsible for such Claim. Creditors who vote are not required to indicate on their Ballots the particular Debtor against which they believe their Claims should be asserted. Claims against more than one of the Debtors arising from the same injury, damage, cause of action, or common facts, shall be counted only once as if such claim were against a single Debtor. The Proponents submit that consolidated voting and Ballot tabulation is appropriate under the circumstances of the Debtors' cases for the reasons stated herein.

Ballots for acceptance or rejection of the Plan are being provided to Creditors in the three Classes of Claims entitled to vote to accept or reject the Plan: Class 2 (Customer Claims), Class 3 (General Unsecured Claims), and Class 4 (Convenience Claims). Each Holder of a Claim should read this Disclosure Statement and the Plan.

You should complete and sign the enclosed ballot and return such ballot in the envelope provided. In order to be counted, your ballot must be **actually received** by **The Garden City Group**, *by mail*, *to* P.O. Box 9615, Dublin, Ohio 43017-4915 or *by messenger or overnight courier*, *to* 5151 Blazer Parkway, Suite A, Dublin, Ohio 43017 on or before **4:00 p.m. (prevailing Eastern time) on December 13, 2010** (the "<u>**Voting Deadline**</u>").

Other forms of personal delivery of ballots including overnight delivery service, courier service, and delivery by hand are acceptable. **Facsimile transmissions are not acceptable. Electronic mail transmissions are not acceptable.** There is no need to file your Ballot with the Clerk of the Bankruptcy Court. If your ballot is damaged or lost, or if you do not receive a ballot to which you are entitled, you may request a replacement by contacting The Garden City Group, Inc. at P.O. Box 9615, Dublin, OH 43017-4915, by telephone at 631-470-5000, or e-mail at MVMTeam@gardencitygroup.com.

Only actual votes will be counted. A failure to return a ballot will not be counted as a vote for or against the Plan. Improperly completed or late ballots will not be counted. Any

ballot that indicates both an acceptance and a rejection of the Plan will not be counted. If a creditor casts more than one ballot voting the same Claim before the Voting Deadline, the latest dated ballot received before the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior ballots. Creditors must vote all of their Claims within a particular Class under the Plan either to accept or reject the Plan and may not split their votes within a particular Class; thus, a ballot (or a group of ballots) within a particular Class received from a single Creditor that partially rejects and partially accepts the Plan will not be counted.

**Disclosure Statement Enclosures.**

Accompanying this Disclosure Statement is a copy of (i) the Plan ("**Exhibit A**") and (ii) the liquidation analysis ("**Exhibit B**"). In addition, those parties eligible to vote will receive a ballot for voting on the Plan.

**Confirmation of the Plan.**

Your vote on the Plan is important. Acceptance of the Plan requires the affirmative vote of at least two-thirds (2/3) in dollar amount <u>and</u> more than one-half (1/2) in number of the voting Holders of Claims in each Class.

If at least one Class of Claims that is Impaired under the Plan votes to accept the Plan, but certain Classes of Claims vote to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Court finds that the Plan does not unfairly discriminate against the Impaired Class or Classes voting against the Plan and accords fair and equitable treatment to such Class or Classes. The Proponents intend to request such a "cramdown" confirmation if any voting Class does not vote to accept the Plan.

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan for **10:00 a.m. (prevailing Eastern time) on December 21, 2010** at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York. Any party in interest may object to confirmation of the Plan. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be served upon (i) counsel to the Debtors, Greenberg Traurig, LLP, 200 Park Avenue, New York, New York, 10166, Attention: Allen G.

Kadish, Esq. and Burke A. Dunphy, Esq., (ii) counsel to the Official Committee of Unsecured Creditors, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: S. Jason Teele, Esq.; and (iii) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attention: Elisabetta Gasparini, Esq., on or before **4:00 p.m. (prevailing Eastern Time) on December 14, 2010**, in the manner described in the Disclosure Statement Order. **The Confirmation Hearing may be adjourned from time to time without further notice other than by announcement in open court.**

**Recommendations With Respect to the Plan.**

The Plan and Disclosure Statement are the product of the Proponents working together on behalf of the all stakeholders. **The Proponents recommend that you accept the Plan** by voting your ballot accordingly and timely returning your completed ballot in the pre-printed envelope provided.

**DISCLAIMER:**

**THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ACCEPTING THE PLAN. NO REPRESENTATIONS OTHER THAN THOSE EXPLICITLY SET FORTH IN THIS DISCLOSURE STATEMENT (INCLUDING ANY EXHIBITS) ARE AUTHORIZED CONCERNING THE DEBTORS, INCLUDING THE VALUE OF THEIR ASSETS OR THE CLAIMS OF THEIR CREDITORS. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS FOR THE PURPOSE OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY OTHER PURPOSE. THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE EITHER A GUARANTY OF THE ACCURACY OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT.**

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN DOCUMENTS RELATED TO THE PLAN, CERTAIN EVENTS IN THE CASE AND CERTAIN FINANCIAL INFORMATION. ALTHOUGH THE PROPONENTS BELIEVE THAT THE DISCLOSURE STATEMENT AND RELATED DOCUMENT SUMMARIES ARE FAIR AND ACCURATE, THEY ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE PLAN, SUCH UNDERLYING DOCUMENTS, OR ANY APPLICABLE STATUTORY PROVISIONS. THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT. ALL EXHIBITS TO THE DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED, AND THE PROPONENTS DISCLAIM ANY OBLIGATION TO UPDATE ANY SUCH STATEMENTS AFTER THE HEARING ON THE APPROVAL OF THE DISCLOSURE STATEMENT.

EXCEPT AS OTHERWISE SPECIFICALLY NOTED, THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT NECESSARILY BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

ALL PARTIES IN INTEREST ARE ENCOURAGED TO READ THE ENTIRE DISCLOSURE STATEMENT CAREFULLY, INCLUDING THE PLAN AND OTHER EXHIBITS, BEFORE DECIDING TO VOTE EITHER TO ACCEPT OR REJECT THE PLAN. HOLDERS OF CLAIMS SHOULD, HOWEVER, NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL,

BUSINESS, FINANCIAL, OR TAX ADVICE AND SHOULD CONSULT WITH THEIR OWN ADVISORS.

## ARTICLE II.
### DEBTORS' HISTORY AND BUSINESS BACKGROUND

**Business Description.**

The Debtors were primarily engaged in the business of owning, operating, and servicing automated teller machines ("**ATMs**") owned by the Debtors and others in the New York City metropolitan area. The Debtors also operate (or operated, as the case may be) several retail check-cashing businesses located in the Bronx, New York and Jersey City, New Jersey, an alarm installation and servicing business located in Mount Vernon, New York, and an armored car business in the New York City metropolitan area. Each of the Debtors are believed to have been owned directly or indirectly by Robert Egan, the president and sole equity owner, and operated under his direction with the exception of certain real estate holdings, which were jointly owned with his spouse.

The Debtors owned and leased several office, warehouse, and retail store premises in Westchester County, New York and in surrounding areas including the Bronx, New Jersey, and Connecticut, from which the Debtors' businesses were or are operated. Substantially all of the Debtors' property was located in the states of New York, New Jersey, and Connecticut. The Debtors' books and records are located primarily at their location at 138 South Columbia Avenue, Mount Vernon, New York 10553.

Among the operating entities, the Debtors' main services are or were provided by (i) NowCash Ltd.; (ii) ATM Management, LLC; (iii) Armored Money Services, LLC; (iv) District Security Services, LLC; (v) Montgomery Check Cashing Corp.; (vi) Mount Vernon Money Center, Inc.; and (vii) MVMC Service, Inc.

NowCash owned ATMs in various locations such as grocery stores, gas stations, and convenience stores. NowCash provided maintenance and any required servicing for its machines regardless of which entity actually handled the cash management function. The Debtors engaged

in an active marketing process to potential buyers that began in the spring of 2010. F.A.M. Capital LLC's purchase of the NowCash assets for $850,000 was approved by the Bankruptcy Court. As of the date hereof, the Debtors and F.A.M. Capital LLC are negotiating the terms of a proposed order approving the sale.

ATM Management Services provided beneficial cash management, security, technical support, and service and maintenance for the machines owned and operated by NowCash as well as approximately 5,300 ATMs owned by others. The Armored Money Services unit provided traditional armored transportation and related services. The ATM Management Services and Armored Money Services business units were terminated after the arrest of Robert Egan (described below). These units are no longer operating.

District Security Services was staffed by approximately ten (10) employees and provided various security services including alarm, CCTV burglar alarm, fire alarm, and central station monitoring. This business was orderly wound down after the arrest of Robert Egan, which was necessary to facilitate the collection of outstanding customer accounts receivable. These units are no longer operating.

Montgomery Check Cashing Corp. consisted of two retail stores in Jersey City, New Jersey, from which the Debtors operated local check cashing and similar retail financial services. New Jersey Community Financial, LLC was deemed the successful bidder for the assets of Montgomery Check Cashing Corp. for $400,000. The transaction was approved by the Bankruptcy Court on November 8, 2010. As of the date hereof, the Debtors and Montgomery Check Cashing Corp. are negotiating the terms of a proposed order approving the sale.

**Reasons for the Debtors' Chapter 11 Filings.**

On February 8, 2010, Robert Egan, president and sole equity owner of the Debtors, was charged, in a criminal complaint filed in the United States District Court for the Southern District of New York, with bank fraud and conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1344 and 1349, and was taken into federal custody. Robert Egan and Bernard McGarry, the Debtors' chief operating officer, were later indicted on these charges. On September 15, 2010,

Robert Egan pled guilty to seven (7) counts of bank fraud and conspiracy to commit bank fraud. On October 13, 2010, Bernard McGarry also pled guilty to seven (7) counts of bank fraud and conspiracy to commit bank fraud.

Upon the request of the Office of the United States Attorney for the Southern District of New York (the "**U.S. Attorney's Office**"), on February 11, 2010, the Honorable Richard M. Berman, United States District Judge in the Southern District of New York, entered a *Consent Order for Restraint and Seizure of Property* pertaining to MVMMC and its related entities, which prohibited, among other things, any action that would have the effect of depreciating, damaging, or diminishing the value of MVMMC or any of its affiliates or related entities. On February 12, 2010, the Honorable Richard M. Berman entered a *Consent Order for Creation of Receivership and Appointment of Receiver Pursuant to 18 U.S.C. § 983(j) and 21 U.S.C. § 853(e)* over the Debtors, and appointed Allen D. Applbaum as receiver (the "**Receiver**").

The receivership (the "**Receivership**") was created at the request of the U.S. Attorney's Office in the wake of Egan's arrest, to ascertain the financial condition of the Debtors and prevent the dissipation of the Debtors' property and the encumbrance or disposal of assets. The Receivership was also charged with preserving the Debtors' books, records, and documents, and served as a respondent for creditor inquiries.

On March 1, 2010, the Receiver timely filed his interim report (the "**Report**") in the Egan action, *United States of America v. Robert Egan*, 10 Mag. 238, in the United States District Court for the Southern District of New York. In the Report, the Receiver noted a general lack of accounting resources and lack of historical accounting information for the Debtors (*e.g.*, the bookkeeper had been employed for less than a year) and the lack of underlying documentation to support recorded transactions. Furthermore, the number of separate entities and related intercompany activity among those entities requiring reconciliation, along with the general complexity and scope limitations of reconciling accounting activity in certain key working capital accounts, made the reconciliation of the Debtors' books and records difficult. The Receiver further noted the Debtors operated with a significant shortfall in working capital of

approximately $34.7 million. In addition, the Receiver found numerous transactions recorded as loans to Robert Egan totaling approximately $16.4 million. The Receiver found additional loans between the Debtors and other individuals. To date, neither the Receiver nor the Debtors have discovered any actual loan agreements between the Debtors and Robert Egan or certain of these individuals.

Following the filing of the Report, the Receiver continued to assess the opportunities to maximize value and recoveries, including the commencement of bankruptcy cases. The Receiver established communications with creditors, established interim agreements to operate valuable businesses on a temporary basis, wound down burdensome business units, marketed sale opportunities, and disposed of certain assets, including leased premises and vehicles. The Receiver also sought and obtained certain judicial relief in the District Court, including permission to file the instant Cases and an order naming the Receiver as sole corporate manager of the Debtors to the exclusion of all others. *See In re Receivership of Mount Vernon Money Center Corp.*, Civil Action No. 10-CIV-3121 (TPG) (Docket Nos. 9, 10).

Accordingly, as explained in Article V, below, the Debtors' Estates are to be substantively consolidated under the Plan. Generally, this means that all of the Debtors' assets will be pooled and will vest in the MVMMC Trust for the benefit of the MVMMC Trust Beneficiaries, and all Claims will be treated as though they are against the same Debtor, without regard to any distinction among the Debtors.

## ARTICLE III.
## SIGNIFICANT EVENTS DURING THE BANKRUPTCY

**Debtors as Debtors-In-Possession.**

Since the Petition Date, the Debtors, under the supervision of their sole corporate manager, continued in possession of their property and in control of their business operations pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Debtors filed the requisite schedules of assets and liabilities and statements required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as well as the monthly financial statements required by section 1106

of the Bankruptcy Code, Bankruptcy Rule 2015(a), and the guidelines of the United States Trustee's Office (the "**U.S. Trustee**"). The Proponents anticipate payment in full of all U.S. Trustee Fees as those fees come due in the ordinary course. Meetings of Creditors pursuant to section 341(a) of the Bankruptcy Code were held on July 8, 2010, August 19, 2010, and September 23, 2010.

**Employment of Professionals During these Cases.**

Prior to filing its Chapter 11 petition, the Debtors retained the law firm of Greenberg Traurig, LLP ("**Greenberg Traurig**") to advise them concerning work-out, restructuring, and insolvency issues, as well as the possibility of filing for bankruptcy and other alternatives for the disposition and winding-up of the Debtors' businesses. The Receiver, on behalf of the Debtors, retained FTI Consulting, Inc. ("**FTI**") as temporary management and employees of the Debtors. On May 20, 2010, the District Court authorized payment of FTI's and Greenberg Traurig's fees incurred up until that date. The District Court also approved of a retainer for both FTI and Greenberg Traurig in anticipation of bankruptcy.

On May 27, 2010, the Debtors filed their voluntary chapter 11 petitions. Shortly thereafter, the Debtors obtained an order from the Bankruptcy Court authorizing them to employ Greenberg Traurig as their bankruptcy counsel, FTI as temporary management and employees of the Debtors, and The Garden City Group, Inc ("**GCG**") as the Noticing and Claims Agent for the Debtors. Greenburg Traurig's and FTI's estimated fees and expenses through September 30, 2010 total approximately $2.38 million, of which no portion has been paid. GCG's estimated fees and expenses through September 30, 2010 total approximately $241,000, of which no portion has been paid.

On June 11, 2010, the U.S. Trustee appointed the Committee. The members of the Committee are Bank of America, N.A.; U.S. Bank National Association; Webster Bank National Association; New York Community Bancorp., Inc.; Actors Federal Credit Union; Omnex Group; Inc.; and NorthEast Alliance Federal Credit Union (Docket No. 53) (the "**Appointment of Committee of Unsecured Creditors**"). As a result of voluntary resignations by Committee

members in September and October, the U.S. Trustee filed two *Notices of Amended Appointment of Committee of Unsecured Creditors* which removed Omnex Group, Inc. and U.S. Bank National Association from the Committee (Docket Nos. 262 and 296).

On July 27, 2010, the Bankruptcy Court entered an order authorizing the Committee to employ Lowenstein Sandler PC ("**Lowenstein Sandler**") as its counsel. On August 5, 2010, the Bankruptcy Court entered an order authorizing the Committee to employ MorrisAnderson & Associates Ltd. ("**MorrisAnderson**") as its financial advisors. Lowenstein Sandler's estimated fees and expenses through September 30, 2010, total approximately $425,000, of which no portion has been paid. MorrisAnderson's estimated fees and expenses through September 30, 2010, total approximately $241,500, of which no portion has been paid.

**Claims Bar Date - Deadline To File Proofs Of Claim.**

On May 28, 2010, the Debtors filed a *Motion For An Order Establishing Deadlines And Procedures For Filing Proofs Of Claim And Approving The Form And Manner Of Notice Thereof* seeking to establish deadlines of August 6, 2010 for all Persons and December 6, 2010 for all governmental units to file Proofs of Claim (the "**Claims Bar Date**") (Docket Nos. 10 and 46). On July 1, 2010, the Bankruptcy Court entered an order setting these dates as the Claims Bar Dates for all creditors (including governmental units) (Docket No. 89).

On October 15, 2010, a Notice of Supplemental Deadline to File Proofs of Claim and Proof of Claim Form was served by the Debtors upon approximately 280 parties (the "**Supplemental Parties**") that the Debtors identified as having potential claims in these Cases (Docket No. 289). The Claims Bar Date for the Supplemental Parties is November 19, 2010.

**Secured Creditors.**

The Debtors have no secured creditors except certain real estate mortgage holders and equipment lease creditors. Other creditors may assert a lien but the Debtors believe they are unsecured.

MoneyGram Payment Systems, Inc. ("**MoneyGram**") is a former customer of the Debtors. By virtue of certain proofs of claims filed herein, MoneyGram asserts a first priority

perfected security interest in and claim on certain assets including furniture, fixtures, equipment, inventory, accounts, deposit accounts, cash, insurance, documents, instruments, contract rights, rights to payment of money and intangibles of certain of the Debtors (Montgomery Check Cashing Corp., Armored Money Services LLC, Mount Vernon Money Center Corp. and Manhattan Money Branch.com, Inc.) in the approximate amount of $6.7 million and other claims against other Debtors (the "**MoneyGram Claim**").  The Proponents dispute, among other things, the classification and amount of the MoneyGram Claim.  In an effort to resolve the dispute over the MoneyGram Claim on an interim basis to allow confirmation of the Plan, the Proponents and MoneyGram agree to maintain the rights of all parties and submit the MoneyGram Claim to the MVMMC Trustee for her review pursuant to the Customer Claim Report process set forth in the Plan.  MoneyGram shall have the right to challenge any determination made by the MVMMC Trustee in the Customer Claim Report as to the MoneyGram Claim and have the Bankruptcy Court determine the allowance, amount, and classification of such MoneyGram Claim.  If the MVMMC Trustee finds the MoneyGram Claim to be a valid first priority perfected security interest in the aforementioned assets or some of them, and the Bankruptcy Court so approves of the MVMMC Trustee's finding, and the amount thereof is fixed thereby, MoneyGram will be granted an Allowed Secured Claim under the Plan to the extent thereof including, if and to the extent appropriate, a replacement lien for use of cash collateral.  Any replacement lien granted to MoneyGram in respect of use of cash collateral will not exceed the amount of such cash collateral attributable to MoneyGram's collateral used during the Cases.  The MoneyGram Claim to the extent of its allowance against a Debtor as a perfected secured claim will be recoverable only from assets of the MVMMC Trust and will have priority over Class 3 Claims to the extent thereof.  In the event and to the extent the MoneyGram Claim in whole or in part is not secured, the Money Gram Claim shall be reclassified in another class to reflect the proper allowance as to the Debtor(s) against which such claim, if any, will be allowed, and the proper amount(s) and class(es) of such claim.

**Sale of Substantially All of the Debtors' Assets.**

Prior to the Petition Date, the Receiver determined that the Debtors lacked the financial ability to continue as a going concern and that a sale of their assets appeared to be the best way to generate value for the Estates. The Debtors filed several motions to market and sell their assets, including:

- Motion for an Order (I) Authorizing Sale of Miscellaneous Assets, (II) Authorizing Debtors to Assume a Consulting Agreement for Liquidation of Assets with JG Resources, LLC, and (III) Granting a Limited Super-Priority Claim (Docket No. 13) (the "**Miscellaneous Assets Sale**");

- Motion for Orders Approving (I) Bidding Procedures and Related Relief Regarding The Sale Of Debtors Real Estate Assets, and Notice Thereof, and (II) Such Sales (Docket No. 20) (the "**Real Property Sale**");

- Motion for Orders Approving (I) Bidding Procedures and Related Relief Regarding the Sale of the Assets of Debtor NowCash, Ltd., and Notice Thereof, (II) Interim Services Agreement, and (III) Sale (Docket No. 117) (the "**NowCash Sale**"); and

- Motion For Orders Approving (I) Bidding Procedures And Related Relief Regarding The Sale Of Assets Of Montgomery Check Cashing Corp., And Notice Thereof, (II) Interim Services Agreement, (III) Agreement To Release Pre-Petition Escrows, And (IV) Sale (Docket No. 250) (the "**Montgomery Sale**").

The Debtors, in consultation with the Committee, adjourned the Miscellaneous Assets and Real Property Sales because the initial sale dates were likely to yield proceeds that were below the sum owed upon the notes owed on the properties and would not have provided a substantial return for creditors. The NowCash Sale will result in a net recovery of $850,000 for the Estates and was approved by the Bankruptcy Court during the hearing held on September 15, 2010. At the time this Disclosure Statement was drafted, an order approving the NowCash Sale was being prepared by the Debtors. A hearing to approve the Montgomery Sale was held on November 8, 2010. The Bankruptcy Court approved the sale on that date, however, as of the date of this Disclosure Statement, the Debtors were preparing an order approving the transaction.

**Adversary Proceeding and other matters.**

*Money Spot, Inc. v. Armored Money Services LLC*, Case No. 10-8376, United States Bankruptcy Court for the Southern District of New York

On June 11, 2010, Money Spot, Inc. ("**Money Spot**") filed an adversary proceeding in the United States Bankruptcy Court for the Southern District of New York against one of the Debtors in these cases, Armored Money Services LLC. The complaint seeks the return of $170,000 to Money Spot (the "**Funds**") and asserts two causes of action (the "**Complaint**"). The first cause of action seeks a declaration that the Funds are not property of the Estates. The second cause of action seeks a declaration that the Debtors' Estates are "bailees" with no ownership interest in the Funds. The Complaint generally asserts that allowing the Debtors' Estates to keep the Funds would constitute an "unjust enrichment" to the Debtors' Estates.

On July 23, 2010, the Committee filed a Motion to Intervene as a Party Defendant (Docket No. 5) (the "**Motion to Intervene**"). The Motion to Intervene was unopposed and an order granting the motion was entered on October 29, 2010.

On October 26, 2010, the Debtors filed a Motion for an Order Extending Time to Answer or Otherwise Respond to the Complaint (Docket No. 12) (the "**Motion to Extend Time**"). The Plaintiff opposed the Motion to Extend Time on October 27, 2010. At the time of this Disclosure Statement, a hearing to consider the Motion to Extend Time was scheduled for November 12, 2010.

*ADP Federal Credit Union v. Mount Vernon Money Center Corp. et al*, Case No. 10-3772, United States District Court for the Southern District of New York

On May 7, 2010, ADP Federal Credit Union ("**ADP**") filed a civil complaint against Mount Vernon Money Center Corp. ("**Mount Vernon**"), Robert Egan ("**Egan**"), and Bernard McGarry ("**McGarry**") in the United States District Court for the Southern District of New York. The complaint asserts three causes of action (the "**Complaint**") and seeks a judgment of at least $838,360 consisting of $400,000 in damages and $438,360 in principal plus interest

against Mount Vernon, Egan, and McGarry. The three causes of action assert a conversion claim against Mount Vernon, Egan and McGarry respectively.

On August 5, 2010, a Notice of Filing Chapter 11 Bankruptcy Cases was filed by the Debtors. The Court stayed this action for a limited time, through March 4, 2011 (Docket No. 17). At the time of this Disclosure Statement, a status conference was scheduled for March 4, 2011.

> *Peggy Tirschwell v. Mount Vernon Money Center Corp. and Angel G. Colon*, Case No. 109164/09, Supreme Court of the State of New York, County of New York

On June 16, 2009, Peggy Tirschwell (the "**Tirschwell**") instituted an action against Mount Vernon Money Center Corp. ("**Mount Vernon**") and Angel G. Colon ("**Colon**") in New York State Court (the "**State Court Action**"). Tirschwell asserts she was injured as a result of Colon's negligent operation of one of Mount Vernon's vehicles on May 20, 2009.

On October 12, 2010, Tirschwell, through her counsel, filed a motion with the Bankruptcy Court for relief from the automatic stay in order to pursue the State Court Action (the "**State Court Action Motion**"). A hearing to consider the State Court Action Motion is scheduled for November 23, 2011.

**ARTICLE IV.**
**FINANCIAL STATUS**

**Debtors' Liabilities.**

The Debtors' schedules (on an aggregate basis) indicated a total of approximately $96 million in debt as of the Petition Date, with approximately $378,788 in unsecured priority claims, approximately $992,374[6] in secured claims, and $95 million in unsecured claims. Since the Petition Date, the Debtors' expenses have generally been funded in the ordinary course of business.

The Debtors have incurred post-petition Administrative Expense Claims and Priority Claims in connection with its operations and its bankruptcy. Unpaid Administrative Expense Claims, through September 30, 2010, total approximately $3.2 million, the majority of which are

---

[6] This amount does not include the alleged MoneyGram Claim.

related to professional services rendered by the retained Professionals.  Priority Claims, through September 30, 2010, total approximately $997,075.

As of the Bar Date, the Proponents estimate total Claims against the Estates of approximately $91,901,842 (after preliminary analysis of duplicative and amended Claims, although the total gross Claims filed according to the official Claims register is $2,080,986,031.40).  The total Customer Claims are estimated at $56,365,809.  The total General Unsecured Claims are estimated at $33,513,745.

**Debtors' Assets.**

As of the Petition Date, the Assets of the Debtors' Estates included the following items:

1.      Cash-on-Hand/Bank Accounts.  As of November 8, 2010, the Debtors' cash balance totaled $5,620,697 in all accounts.[7]

2.      Accounts Receivable.  As of September 30, 2010, the Debtors had accounts receivable as reflected on their books due from third parties in the approximate amount of $5,278,358.  Cash received from these collections has been utilized to operate the Debtors' businesses during the Cases.

3.      Insurance.  As of the Petition Date, the Debtors may have contract(s) of, and/or rights to, certain insurance coverage or Insurance Policies.  These contract(s) and/or rights may have value for the Estates and be a potential source of recovery for the Creditors and MVMMC Trust Beneficiaries.  All of the Debtors' interests and/or rights to the potential insurance coverage or Insurance Policies are maintained under the Plan and will vest in the MVMMC Trust on the Effective Date.  The Debtors' potential interests and/or rights to insurance coverage and/or Insurance Policies will be investigated either prior to the Effective Date by the Proponents or after the Effective Date by the MVMMC Trustee, on behalf of the MVMMC Trust.

---

[7]  This amount does not include the funds seized (approximately $19 million) by the United States Government and which are expected to be distributed to victims pursuant to the Restitution Order.  Creditors who may be victims may file a victims impact statement with the United States Government pursuant to the procedures set forth under the "US v. R. Egan, B. McGarry - Victim-Impact Statement" tab at http://www.mvmc.com/.

## ARTICLE V.
## DESCRIPTION OF THE PLAN

**Introduction.**

This section summarizes the salient provisions of the Plan. The Plan is annexed to this Disclosure Statement as **Exhibit A**. Parties are encouraged to review the Plan in its entirety for a full understanding of its provisions and impact on creditors.

Under the Plan, all Claims and all Interests except Administrative Claims and Priority Tax Claims are placed into the Classes set forth below. Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims, as described below, are not classified in the Plan. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, discharged, released, or otherwise settled prior to the Effective Date. The Plan also provides for the substantive consolidation of the Estates of all of the Debtors. The effectiveness of the Plan is conditioned upon approval of this and other provisions of the Plan.

**Unclassified Claims.** Except for Priority Tax Claims[8], which are Impaired only to the extent permitted by the Bankruptcy Code, unclassified Claims are Unimpaired by the Plan. Each Holder of an Unclassified Claim is conclusively presumed to have accepted the Plan and,

---

[8] Priority Tax Claims will be paid pursuant to the Bankruptcy Code and on the later of (i) the Effective Date and (ii) the date a Priority Tax Claim becomes an Allowed Priority Tax Claim, such Holder of an Allowed Priority Tax Claim shall be come entitled to receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Priority Tax Claim (i) equal Cash payments during a period not to exceed five (5) years after the date of the Final Order, totaling the aggregate amount of such Claim, plus post-petition interest, plus simple interest at the rate required by applicable law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to by the Holder or (ii) such other treatment as is agreed to by the Holder of such Allowed Priority Tax Claim and the MVMMC Trustee.

therefore, is not entitled to vote to accept or reject the Plan. Priority Tax Claims and Administrative Expense Claims are the unclassified Claims.

**Unimpaired Class of Claims.** Each Holder of an Unimpaired Claim is deemed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan. Class 1-A consists of all Non-Tax Priority Claims. Class 1-B consists of all Secured Claims. The Holders of Class 1-A Claims and Class 1-B Claims are Unimpaired and are deemed to accept the Plan.

**Impaired Classes of Claims.** Each Holder of a Claim placed in one of the Classes set forth below is Impaired under the Plan and entitled to vote to accept or reject the Plan:

**Class 2: Customer Claims.** Subject to section 2.4(c) of the Plan, Class 2 consists of all Allowed Customer Claims, including Potential Trust Claims[9], asserted in Proofs of Claim that have been timely Filed pursuant to the Bar Date Order. For purposes of voting on the Plan, any Creditor who asserted a Customer Claim in its Proof of Claim shall be entitled to vote in Class 2.

**Class 3: General Unsecured Claims.** Subject to section 2.4(c) of the Plan, Class 3 consists of all Claims that are not Customer Claims, Secured Claims, Priority Tax Claims, Non-Tax Priority Claims, or Other Priority Claims.

**Class 4: Convenience Claims**. Class 4 consists of all Claims that would otherwise be Class 2 or Class 3 Claims as of the Petition Date in the amount of $2,000.00 or less; provided, however, that if the Holder of a Claim that would otherwise be a Class 2 or Class 3 Claim in an amount greater than $2,000.00 shall make an election on such Holder's ballot reducing its Claim to $2,000.00, such Claim shall be reduced to $2,000.00 in amount and treated solely as a Convenience Claim for all purposes.

**Class 5: Equity Interests.** Class 5 consists of Interests in any of the Debtors. The Holders of Class 5 Interests shall neither receive nor retain any property under the Plan. Interest Holders are deemed to have rejected the Plan.

---

[9] The term Potential Trust Claims is defined in the Claims Bar Date Order as "any Claim asserting that the Debtors hold money or property in trust."

**Treatment of Unclassified Claims.**

The Plan provides for the following treatment of Unclassified Claims:

**Administrative Expense Claims.** The legal and equitable rights of the Holders of Administrative Expense Claims are unaltered by the Plan. As soon as reasonably practicable after the later of (i) the Effective Date, or (ii) the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim the MVMMC Trustee shall pay to each Holder of an Allowed Administrative Expense Claim from the property of the Estates, in full satisfaction, settlement, and release of and in exchange for such Allowed Administrative Expense Claim (a) Cash equal to the amount of such Allowed Administrative Expense Claim or (b) such other treatment as to which the MVMMC Trustee and the Holder of such Allowed Administrative Expense Claim shall have agreed upon.

The Proponents believe that there are sufficient Assets that are property of the Estates to satisfy all or substantially all Allowed Administrative Expense Claims. The MVMMC Trust shall pay any Allowed Administrative Expense Claims not paid prior to the Effective Date. The Proponents will seek a determination at the confirmation Hearing that some or all of the funds in the Debtors' possession, custody and/or control are not subject to Customer Claims and, therefore, these funds should be used to pay Allowed Administrative Expense Claims on or before the Effective Date.

**Bar Dates for Administrative Claims.** The Confirmation Order will establish an Administrative Expense Claims Bar Date for filing Administrative Expense Claims, except for Claims of the kind specified in section 3.3 of the Plan. The Administrative Expense Claims Bar Date will be thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Holders of Administrative Expense Claims that are subject to the Administrative Expense Claims Bar Date shall submit requests for payment on or before such Administrative Expense Claims Bar Date or be forever barred from submitting any request on account of such Administrative Expense Claims.

**Applications for Fee Claims.** All applications by Professionals in respect of Fee Claims shall be filed with the Bankruptcy Court within sixty (60) days after the Effective Date. Any such application not filed within sixty (60) days after the Effective Date shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof.

**U.S. Trustee Fees.** All unpaid U.S. Trustee Fees incurred before the Effective Date shall be paid by the Debtors in full on the Effective Date. In addition, all U.S. Trustee Fees incurred after the Effective Date shall be timely paid from MVMMC Trust Assets by the MVMMC Trustee in the ordinary course as such U.S. Trustee Fees become due and payable, until the entry of a final decree closing the Cases. The MVMMC Trustee shall also continue to file quarterly operating reports until the entry of a final decree closing the Cases. Unpaid U.S. Trustee Fees shall accrue interest that is an MVMMC Trust Expense. The Administrative Expense Claims Bar Date shall not apply to U.S. Trustee Fees.

**Priority Tax Claims.** On the later of (i) the Effective Date and (ii) the date a Priority Tax Claim becomes an Allowed Priority Tax Claim, such Holder of an Allowed Priority Tax Claim shall become entitled to receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Priority Tax Claim (a) equal Cash payments during a period not to exceed five (5) years after the date of the Final Order, totaling the aggregate amount of such Claim, plus post-petition interest, plus simple interest at the rate required by applicable law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to by the Holder or (b) such other treatment as is agreed to by the Holder of such Allowed Priority Tax Claim and the MVMMC Trustee.

**Treatment of Classified Claims.**

The Plan provides for the following treatment of Claims in the following Classes:

**Class 1-A: Non-Tax Priority Claims.** The legal and equitable rights of the Holders of Allowed Non-Tax Priority Claims are unaltered by the Plan. As soon as reasonably practicable after the latest of (i) the Distribution Date, (ii) the date on which such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, and (iii) the date on which such Non-Tax Priority

Claim becomes due and owing in the ordinary course of the Debtors' businesses, the MVMMC Trustee shall pay from MVMMC Trust Assets to each Holder of an Allowed Non-Tax Priority Claim, in full satisfaction, settlement, and release of and in exchange for such Allowed Non-Tax Priority Claim, (i) Cash from MVMMC Trust Assets equal to the amount of such Allowed Non-Tax Priority Claim or (ii) such other treatment which the MVMMC Trustee and the Holder of such Allowed Non-Tax Priority Claim have agreed upon in writing.

**Class 1-B: Secured Claims.** Each Holder of an Allowed Secured Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Secured Claim, at the discretion of the MVMMC Trustee from MVMMC Trust Assets, (i) Cash equal to the Allowed amount of such Secured Claim; (ii) the property securing such Claim; or (iii) such other treatment to which the Holder and the MVMMC Trustee agree to in writing, including, having such Secured Claim addressed in the Customer Claim Report. Any agreement reached by the Holder of an Allowed Secured Claim and the MVMMC Trustee shall be reflected in the Customer Claim Report. A Holder of a Secured Claim who agrees to have its Claim considered by the MVMMC Trustee through the Customer Claim Report process shall retain any rights it had prior to the Petition Date.

**Class 2: Customer Claims.** On or as soon as reasonably practicable after the Distribution Date, the MVMMC Trustee shall pay to each Holder of an Allowed Customer Claim the value of the Allowed Customer Claim from Customer Funds in full satisfaction, settlement, and in release of and in exchange for such Allowed Customer Claim (less any amounts paid to such Holder pursuant to the Restitution Order); provided, however, that no Holder of an Allowed Customer Claim shall be entitled to receive more than the amount of such Allowed Customer Claim; provided further that if the total amount of Customer Claims Allowed by the Allowed Customer Claim Order exceeds the amount of the Customer Funds, all Holders of Allowed Customer Claims shall receive a Pro Rata share of the Customer Funds. If the Customer Funds are less than the total of all Allowed Customer Claims, the difference between a Holder's Allowed Customer Claim and Holder's Pro Rata share of the Customer Funds on

account thereof shall be treated as an Allowed Class 3 Claim or an Allowed Class 4 Claim. Any Holder asserting a Class 2 Claim whose Claim has not been deemed an Allowed Customer Claim in the Allowed Customer Claim Order shall be treated as a Holder of a Class 3 Claim for all purposes under this Plan. The Holders of Allowed Class 2 Customer Claims are impaired under the Plan and are entitled to vote on the Plan.

**Class 3 (General Unsecured Claims).** As soon as reasonably practicable after the later of (i) the initial Distribution Date as defined in section 7.2 of the Plan, and (ii) the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, the MVMMC Trustee shall pay from MVMMC Trust Assets to each Holder of an Allowed General Unsecured Claim, in full satisfaction, settlement, and in release and in exchange for such Allowed General Unsecured Claim against the MVMMC Trust, such Holder's Pro Rata share of the MVMMC Trust Assets (less any amounts paid to such Holder pursuant to the Restitution Order or as the Holder of an Allowed Claim in Class 2); provided, however, that no Holder of an Allowed General Unsecured Claim shall be entitled to receive more than the amount of such Allowed Claim; provided further that the Pro Rata share of the MVMMC Trust Assets allocable to the Holders of Class 3 Claims shall be determined after calculating the payment owed to the Holders of Administrative Expense Claims, Allowed Customer Claims, and Allowed Class 4 Claims.

**Class 4 (Convenience Claims).** As soon as practicable after the later of (i) the Effective Date and (ii) the date on which a Convenience Claim becomes an Allowed Convenience Claim or the Holder of an Allowed General Unsecured Claim elects to have such claim treated as an Allowed Convenience Claim, the MVMMC Trustee shall pay to the Holder of such Allowed Convenience Claim from the MVMMC Trust Assets (less any amounts paid to such Holder pursuant to the Restitution Order), in full payment, satisfaction, and in release of and in exchange for such Allowed Claim against the MVMMC Trust, Cash in the amount of fifty percent (50%) of its Allowed Convenience Claim, up to a maximum amount of $1,000.

**Class 5 (Equity Interests)**.  On the Effective Date, Interests in the Debtors shall automatically be extinguished and cancelled.

**Implementation of the Plan.**

The following provisions govern implementation of the Plan after the Confirmation Date.

**Conditions Precedent to the Effective Date.**  Each of the following events shall occur on or before the Effective Date:

(1)     the Confirmation Order, in a form and substance reasonably acceptable to the Proponents and which shall include findings that (i) the Plan was proposed in good faith and (ii) the Plan satisfies the applicable provisions of the Bankruptcy Code as set forth in section 1125(e) of the Bankruptcy Code, shall have been entered by the Bankruptcy Court and shall be a Final Order;

(2)     the Bankruptcy Court shall have determined that the MVMMC Trustee is duly authorized to take the actions contemplated in the Plan and the MVMMC Trust Agreement, which approval and authorization may be set forth in the Confirmation Order;

(3)     the MVMMC Trust Agreement shall be executed and the MVMMC Trust shall be established and become effective;

(4)     all documents, instruments, and agreements provided under, or necessary to implement, the Plan shall have been executed and delivered by the applicable parties;

(5)     the MVMMC Trustee shall obtain a bond or surety for the performance of his/her duties; and

(6)     all other documents required to be Filed with the Plan Supplement, each in form and substance reasonably acceptable to the Proponents, shall have been duly and validly executed and delivered by the parties thereto (or provisions therefor shall have been made) and all conditions to their effectiveness shall have been satisfied or waived.

**Substantive Consolidation of the Debtors.**

The Plan shall be deemed to be a motion by the Debtors for substantive consolidation. Any objection by an affected Creditor to such consolidation shall be treated as an objection to

Confirmation and shall be determined by the Bankruptcy Court at the Confirmation Hearing. The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court, pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors and their respective Estates, for all purposes relating to the Plan, including for purposes of voting, Confirmation, and Distributions.

On the Effective Date, the Estates of all of the Debtors shall be deemed to be substantively consolidated solely for purposes of voting on and making Distributions under the Plan, and (i) all Assets and liabilities of the Debtors shall be deemed to be merged, (ii) each obligation of any Debtor shall be deemed to be an obligation of all of the Debtors, (iii) a Claim against any one of the Debtors shall be deemed to be a Claim against all of the Debtors for all purposes, including, without limitation, Distributions under the Plan, (iv) each Claim filed in the Case of any Debtor shall be deemed to be filed against all of the Debtors, (v) all transfers, disbursements, and Distributions made by any Debtor shall be deemed to be made by all of the Debtors, and (vi) all Claims by a Debtor against another Debtor shall be canceled and deemed satisfied. Among other effects, substantive consolidation will extinguish all intercompany claims among the Debtors, further simplifying the process of implementing the Plan.

Holders of Allowed Claims in each Class established pursuant to the Plan shall be entitled to the treatment set forth in the Plan for such Class without regard to which Debtor was originally liable for such Claim. Such substantive consolidation shall not (other than for the foregoing purposes) affect the legal and corporate structure of the Debtors. Notwithstanding such substantive consolidation, the MVMMC Trustee shall pay the U.S. Trustee Fees for each Debtor until such Debtor's Case is closed.

In addition, notwithstanding any provision of the Plan to the contrary, any Holder of multiple Allowed Claims against more than one Debtor that arise from the contractual, joint, joint and several, or several liability of such Debtors, the guaranty by one Debtor of another Debtor's obligation or other similar circumstances, shall be entitled to one Allowed Claim that, in the aggregate, does not exceed the amount of any single such Claim. For the avoidance of

doubt, Claims against more than one of the Debtors arising from the same injury, damage, cause of action, transaction, or common facts, shall be Allowed only once as if such claim were against a single Debtor.

Given that substantive consolidation is a remedy to be approved by a bankruptcy court in certain circumstances, a short legal explanation of the reasons to allow substantive consolidation in these circumstances follows. Although there is no express provision of the Bankruptcy Code providing for the substantive consolidation of multiple debtors, it is well established that the Bankruptcy Code bestows such authority on a bankruptcy court under appropriate circumstances including, as in the Debtors' Cases, in the bankruptcy court's exercise of its general equitable powers under section 105 of the Bankruptcy Code. *See Union Sav. Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Banking Co., Ltd.)*, 860 F.2d 515, 518 n.1 (2d Cir. 1988) ("[s]ubstantive consolidation has no express statutory basis but is a product of judicial gloss.").

Courts have "a good deal of discretion" in determining whether substantive consolidation is appropriate. *In re Deltacorp,* 179 B.R. 773, 777 (Bankr. S.D.N.Y. 1995). For instance, when deciding whether to order substantive consolidation, the Second Circuit has used a balancing test to determine whether the relief achieves the best results for all creditors. *See Federal Deposit Insurance Corp. v. Colonial Realty Co.,* 966 F.2d 57, 60 (2d Cir. 1992) ("The propriety of [substantive consolidation] must, then, be determined solely in light of the principles and rules of equity"); *White v. Creditors Serv. Corp. (In re Creditors Serv. Corp.),* 195 B.R. 680, 690 (Bankr. S.D. Ohio 1996) ("the ultimate inquiry [for a court deciding substantive consolidation] involves a balancing of the equities based on the bankruptcy court's inherent powers pursuant to § 105.").

Traditionally, bankruptcy courts have considered several factors when determining whether to approve substantive consolidation. These factors include the: (1) presence or absence of consolidated financial statements; (2) unity of interest and ownership among various corporate entities; (3) degree of difficulty in segregating and ascertaining individual assets and liabilities; (4) transfers of assets without formal observance of corporate formalities; (5) commingling of assets and business functions; (6) profitability of consolidation at a single physical location; and

(7) disregard of legal formalities. *See In re WorldCom, Inc.*, No. 01-13533, 2003 WL 23861928, at *35 (Bankr. S.D.N.Y. May 25, 2005) (citing *Augie/Restivo,* 860 F.2d at 518; *Soveriero v. Franklin Nat'l Bank,* 328 F.2d 446, 447-48 (2d Cir. 1964); *In re Food Fair, Inc.,* 10 B.R. 123, 126 (Bankr. S.D.N.Y. 1981)). In *Augie/Restivo*, the Second Circuit synthesized the various factors into two main considerations: "(i) that the operational and financial affairs of the debtors are so entangled that the accurate identification and allocation of assets and liabilities cannot be achieved; or (ii) that creditors dealt with the debtors as a single economic unit and did not rely on the separate identity of a debtor in extending credit." *See WorldCom*, at *35-*36 (quoting *Augie/Restivo*, *id.*).

As discussed in *WorldCom*, "to prevail on [substantive consolidation], the Debtors are not required to prove that an allocation of assets and liabilities to the various legal entities cannot be achieved under any circumstances. Rather, it is sufficient to demonstrate that it would be so costly and difficult to untangle the Debtors' financial affairs, such that doing so is a 'practical impossibility,' making substantive consolidation appropriate." *See WorldCom*, at *36 (citing *Chemical Bank New York Trust Co. v. Kheel (In re Seatrade Corp.),* 369 F.2d 845, 848 (2d Cir. 1966) (ordering substantive consolidation because of "expense and difficulty amounting to *practical impossibility* of reconstructing the financial records of the debtors to determine intercorporate claims, liabilities and ownership of assets") (emphasis added); *In re Bonham,* 229 F.3d 750, 766-67 (9th Cir. 2000) (adopting *Augie/Restivo* test and stating that entanglement factor is satisfied if disentangling the debtors' affairs would be "needlessly expensive and possibly futile"); *In re Affiliated Foods, Inc.,* 249 B.R. 770, 780 (Bankr. W.D. Mo. 2000) (ordering substantive consolidation when separating the debtors' accounts "would be 'a real nightmare'" and achieving a separate allocation "probably would not be possible")). Alternatively, a plan proponent must show that it is not possible to create *accurate* financial data for each legal entity. *Augie/Restivo,* 860 F.2d at 519.

The primary rationale for granting substantive consolidation in these Cases is a general lack of historical accounting information for the Debtors (*e.g.*, the Debtors' bookkeeper was

employed for less than a year prior to the filing of these Cases) and the lack of underlying documentation to support the Debtors' pre-petition recorded transactions. Furthermore, the number of separate entities and related intercompany activity between and among the entities requiring reconciliation, comingling of Customer monies in the Debtors' accounts, a lack of oversight and control by the former principals, along with the general complexity and scope limitations of reconciling accounting activity in certain key working capital accounts, make the reconciliation of the Debtors' books and records difficult. For these reasons, the Proponents submit that substantive consolidation of the Debtors is in the best interests of all Creditors, necessary for the efficient administration of the MVMMC Trust, and appropriate under the facts and circumstances of the Debtors' Chapter 11 Cases.

**Waiver of Conditions Precedent to the Effective Date.** Other than with respect to the condition precedent set forth in section 6.10(e) of the Plan, the Proponents, upon notice to one another, may jointly waive in writing any or all of the conditions precedent to the Effective Date set forth in section 6.10 of the Plan, whereupon the Effective Date shall occur without further action by any Person. In the event the Effective Date does not occur within thirty (30) days of the Confirmation Date, pursuant to section 11.9 of the Plan, the Committee shall file with the Bankruptcy Court a *Notice of Failure to Achieve Effective Date* and shall request a status conference with the Bankruptcy Court. The foregoing notice shall be served upon the U.S. Trustee and all parties requesting notice and service of pleadings pursuant to Bankruptcy Rule 2002.

**Reduction of Allowed Claims.** Solely for calculating any Distribution from the MVMMC Trust under the Plan to the Holder of an Allowed Claim, the amount of such Claim shall be reduced by the amount of any Third Party Payment or Insurance Payment received by such Holder. Nothing in the Plan or Confirmation Order shall limit or impact an insurer's right of subrogation, limit or impact the rights of any Person rendering a Third Party Payment in respect of an Allowed Claim to the Holder of such Claim to assert a Claim against the Estates or

the MVMMC Trust or, subject to the Plan, impair or otherwise affect the ability of any Holder of an Allowed Claim to assign such Claim to any Person.

**Reservation of Rights.**  Nothing in the Plan or Confirmation Order shall limit or impact an insurer's right of subrogation, limit or impact the rights of any Person tendering a Third Party Payment in respect of an Allowed Claim to the Holder of such Claim to assert a Claim against the Estates or the MVMMC Trust or, subject to the Plan, impair or otherwise affect the ability of any Holder of an Allowed Claim to assign such Claim to any Person.

**Reports of Third Party Payments.**  Within five (5) Business Days of the receipt of a Third Party Payment, the Holder of an Allowed Claim shall notify the MVMMC Trustee in writing of (i) the name of the Holder, (ii) the amount of such Holder's Allowed Claim in respect of which such payment was received, (iii) the amount of any such payment received or rights of setoff exercised, and (iv) the source of such Third Party Payment.

**Cancellation of Instruments and Stock**.  On the Effective Date, (i) all Interests in the Debtors; (ii) any and all stock options (including, but not limited to, all stock options granted to the Debtors' employees); (iii) any and all warrants; and (iv) any instrument evidencing or creating any indebtedness or obligation of the Debtors, except such instruments that are reinstated (or amended and restated) under the Plan, shall automatically be cancelled and extinguished.  Additionally, as of the Effective Date, all Interests in the Debtors, and any and all warrants, options, rights, or interests with respect to any existing or prospective equity Interest in the Debtors that have been authorized to be issued but that have not been issued automatically shall be deemed cancelled and extinguished without any further action of any party.

**Classes Entitled to Vote.**  Holders of Claims in Class 2 (Customer Claims), Class 3 (General Unsecured Claims), and Class 4 (Convenience Claims) are Impaired by the Plan and shall be entitled to vote to accept or reject the Plan.

**Acceptance by Impaired Classes of Claims.**  An Impaired Class of Claims shall have accepted the Plan if (i) the Holders, other than any Holder designated under section 1126(e) of the Bankruptcy Code, of at least two-thirds in amount of the Allowed Claims actually voting in

such Class have voted to accept the Plan and (ii) the Holders, other than any Holder designated under section 1126(e) of the Bankruptcy Code, of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**Cramdown.** At least one (1) Impaired Class of Claims must vote to accept the Plan in order for the Plan to be confirmed under section 1129(a)(10) of the Bankruptcy Code. If any Impaired Class of Claims does not accept the Plan, the Proponents request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code. The Proponents reserve the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification or for any other reason in the Proponents' discretion.

**The MVMMC Trust.**

**Creation of the MVMMC Trust.** On the Effective Date, the MVMMC Trust shall be formed pursuant to the Plan and the MVMMC Trust Agreement, and the MVMMC Trust Assets and the Debtors' liabilities shall be transferred to and vest in the MVMMC Trust for the benefit of the MVMMC Trust Beneficiaries pursuant to the terms of the Plan and MVMMC Trust Agreement. In the event of any inconsistencies or conflict between the MVMMC Trust Agreement and the Plan, the terms and provisions of the MVMMC Trust Agreement shall control.

**Transfer of MVMMC Trust Assets.** On the Effective Date, all of the Debtors' right, title, and interest in all Assets shall vest in the MVMMC Trust for the benefit of the MVMMC Trust Beneficiaries and shall become and be deemed for all purposes to be MVMMC Trust Assets without any further Bankruptcy Court order, action, or notice to any Person.

**Transfer of Debtors' liabilities.** On the Effective Date, pursuant to the MVMMC Trust Agreement and the Plan, all of the Debtors' liabilities and any Claims asserted against the Debtors shall vest in the MVMMC Trust without any further Bankruptcy Court order, action, or notice to any Person.

**Plan is Motion to Transfer MVMMC Trust Assets.** The Plan shall be considered a motion pursuant to sections 105, 363(b) and (f), and 365 of the Bankruptcy Code to transfer to,

and vest in, the MVMMC Trust, for the benefit of the MVMMC Trust Beneficiaries, any and all Assets as of the Effective Date. Subject to the Allowed Customer Claim Order, the transfers, and vesting of the Assets in the MVMMC Trust for the benefit of the MVMMC Trust Beneficiaries shall be free and clear of all Liens and Claims except as set forth in the Plan, and the Confirmation Order shall so provide. Any objections to such transfer, assignment, and vesting must be made as an objection to Confirmation of the Plan to be heard at the Confirmation Hearing. Notwithstanding the foregoing, after the Effective Date, the MVMMC Trustee may present an Order or Orders to the Bankruptcy Court, suitable for filing in the records of every county or governmental agency where any Assets of the Debtors are or were located, to designate all Liens, Claims, encumbrances, or other interests which appear of record and from which the property is being transferred, assigned, and vested free and clear.

**Distributions.** Pursuant to section 9.02 of the MVMMC Trust Agreement, the MVMMC Trustee shall make Distributions to holders of Allowed Claims as provided in the Plan: first (i) to holders of Allowed Customer Claims, next (ii) to Holders of Allowed Secured Claims, next (iii) to Holders of Allowed Administrative Expense Claims that were unpaid on the Effective Date, next (iv) to MVMMC Trust Expenses, next (v) to Holders of Non-Tax Priority Claims, next (vi) to Holders of Allowed General Unsecured Claims and Convenience Claims following the Initial Distribution under the Plan.

**Execution of the MVMMC Trust Agreement.** The Proponents and the MVMMC Trustee shall execute the MVMMC Trust Agreement on the Effective Date and shall take all other steps necessary to establish the MVMMC Trust.

**Appointment of MVMMC Trustee.** The Committee shall appoint the MVMMC Trustee, who shall be independent of the Debtors. The MVMMC Trustee shall, in accordance with the MVMMC Trust Agreement, serve in such capacity in the discretion of the MVMMC Trust Board through the earlier of (i) the date the MVMMC Trust and the Non-Customer Disputed Claim Reserve are dissolved and (ii) the date such MVMMC Trustee resigns, is terminated, or is otherwise unable to serve; provided, however, that, in the event that the

MVMMC Trustee resigns, is terminated, or is unable to serve, then the MVMMC Trust Board shall have the right to select a successor who shall be appointed as the MVMMC Trustee and shall serve in such capacity until the MVMMC Trust and the Non-Customer Disputed Claim Reserve are dissolved or until such MVMMC Trustee resigns, is replaced, or is terminated and no successor is appointed.

**Bonding of MVMMC Trustee.** The MVMMC Trustee, and any successor MVMMC Trustee appointed pursuant to the MVMMC Trust Agreement, shall, before the Effective Date or upon being selected as a successor MVMMC Trustee, as the case may be, obtain a bond or surety for the performance of his/her duties. Notice of the effectiveness of such bond or surety shall be provided to the U.S. Trustee and shall be a condition precedent to the Effective Date of the Plan. Furthermore, the MVMMC Trustee shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond or surety. The MVMMC Trust Board shall immediately inform the United States Trustee and the Bankruptcy Court in writing of any changes to the identity of the MVMMC Trustee.

**Causes of Action Assigned to MVMMC Trust; Litigation.** Any and all Causes of Action accruing to or assertable by the Debtors shall remain Assets of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective Date shall be transferred to and vest in the MVMMC Trust for the benefit of the MVMMC Trust Beneficiaries. Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the MVMMC Trustee, on behalf of the MVMMC Trust, shall have the right to pursue or not to pursue, or, subject to the terms of the Plan and the MVMMC Trust Agreement, compromise or settle any Causes of Action owned or held by the Debtors or their Estates as of the Effective Date. From and after the Effective Date, the MVMMC Trustee may, on behalf of the MVMMC Trust, commence, litigate, and settle any Causes of Action or rights to payment or claims that belong to the Debtors that may be pending on the Effective Date or instituted by the MVMMC Trust after the Effective Date, except as otherwise expressly provided in the Plan and the MVMMC Trust Agreement. Other than as set forth in the Plan, no other Person, unless designated by the MVMMC Trustee, may pursue such

Causes of Action after the Effective Date; provided, however, that for the avoidance of doubt, nothing in the Plan or the MVMMC Trust Agreement shall waive, limit, or otherwise impair any Person's direct right of action, if any, against any insurer, including the Debtors' insurance providers, companies, or carriers. The MVMMC Trust shall be deemed hereby substituted as plaintiff, defendant, or in any other capacity for either the Committee or any Debtor in all actions pending before the Bankruptcy Court or any other court or tribunal that relates to a Cause of Action, without the need for filing any motion for such relief. In connection with the above-described Causes of Action, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) shall also exist for the benefit of the MVMMC Trust Beneficiaries and shall vest in the MVMMC Trust, the MVMMC Trustee and their respective representatives, and shall also be preserved for and as to the Debtors. The MVMMC Trustee is authorized to take all necessary actions to benefit from such privileges. The Bankruptcy Court shall retain jurisdiction to adjudicate any and all Causes of Action and approve any such settlement, whether commenced prior to or after confirmation of the Plan and the Effective Date.

**Expenses of MVMMC Trustee.** Reasonable fees and expenses incurred by the MVMMC Trustee shall be paid from the MVMMC Trust Assets.

**MVMMC Trust Board.** There shall no more than seven (7) members of the MVMMC Trust Board, appointed by the Committee and disclosed in the Plan Supplement. The simultaneous appointment of a Person to both the Committee and the MVMMC Trust Board shall be permissible. Reasonable fees and expenses incurred by the members of the MVMMC Trust Board shall be paid from the MVMMC Trust Assets.

**Dissolution of the MVMMC Trust.** The MVMMC Trust shall be dissolved no later than three (3) years from the Effective Date unless the Bankruptcy Court, upon a motion Filed before the expiration of such three-year period (as such period may be extended by the Bankruptcy Court as set forth in the Plan), determines that a fixed-period extension is necessary to facilitate or complete the recovery and liquidation of the MVMMC Trust Assets. The timely

Filing of a motion to extend the term of the MVMMC Trust shall automatically extend the term of the MVMMC Trust pending the entry of an order by the Bankruptcy Court granting or denying such motion.  Any extension of the term of the MVMMC Trust, together with any prior extensions thereof, shall not exceed two years without a favorable letter ruling from the IRS that a further extension will not adversely affect the status of the MVMMC Trust as a liquidating trust for federal income tax purposes.

**Liability and Indemnification.**  The MVMMC Trustee, the MVMMC Trust Board, their respective members, designees, or professionals, or any duly authorized agent or representative of the MVMMC Trust, the MVMMC Trustee, or the MVMMC Trust Board, or their respective employees or members, shall not be liable for the act or omission of any other member, designee, agent, or representative of such MVMMC Trustee or MVMMC Trust Board, nor shall such MVMMC Trustee, MVMMC Trust Board, or any member of the MVMMC Trust Board be liable for any act or omission taken or not taken in its capacity as MVMMC Trustee, MVMMC Trust Board, or member of such Board, respectively, other than for specific acts or omissions resulting from such MVMMC Trustee's, Board's or such member's willful misconduct, gross negligence, fraud, or actions constituting a willful violation of Federal securities laws or the Internal Revenue Code.  Each of the MVMMC Trustee or the MVMMC Trust Board may, in connection with the performance of their respective functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinion rendered by such entities, regardless of whether such advice or opinions are provided in writing.  Notwithstanding such authority, neither the MVMMC Trustee nor the MVMMC Trust Board shall be under any obligation to consult with its attorneys, accountants, financial advisors, and agents, and their determination not to do so shall not result in the imposition of liability on the MVMMC Trustee or the MVMMC Trust Board or their respective members or designees, unless such determination is based on willful misconduct, gross negligence, or fraud.  The MVMMC Trust shall indemnify and hold harmless the MVMMC Trustee, the MVMMC Trust

Board and any duly authorized member, agent, or designee thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs, and expenses (including, without limitation, reasonable attorney's fees, disbursements, and related expenses), which such entities may incur or to which such entities may become subject in connection with any action, suit, proceeding, or investigation brought by or threatened against such entities arising out of or due to their acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the MVMMC Trust or the Plan or the discharge of their duties thereunder or hereunder; provided, however, that no such indemnification will made to such entities for actions or omissions as a result of their willful misconduct, gross negligence, or fraud.

**Full and Final Satisfaction Against MVMMC Trust.**  On and after the Effective Date, the MVMMC Trust shall have no liability on account of any Claims or Interests except as set forth in the Plan and in the MVMMC Trust Agreement.  All payments and all Distributions made by the MVMMC Trustee under the Plan shall be in full and final satisfaction, settlement, and release of and in exchange for all Claims against the MVMMC Trust; provided, however, that nothing contained in section 6.5 of the Plan, or in any other provision of the Plan, shall be deemed to constitute or result in a discharge of any Debtor under section 1141(d) of the Bankruptcy Code.

**Conflicts Between MVMMC Trust Agreement and Plan.**  In the event of any inconsistencies or conflict between the MVMMC Trust Agreement and the Plan, the terms and provisions of the MVMMC Trust Agreement shall control.

**Customer Claim Report.**  On or before the Customer Claim Report Deadline, the MVMMC Trustee shall File the Customer Claim Report and serve it via regular mail upon (i) each Customer that timely asserted a Customer Claim by Filing a Proof of Claim, (ii) the U.S. Trustee, and (iii) and all parties requesting notice and service of pleadings pursuant to Bankruptcy Rule 2002.  Customers shall have access to all documents and information, subject only to claims of privilege, work product doctrine or other similar doctrines, or confidentiality

relating to the Customer Claim Report. In furtherance of this objective, the MVMMC Trustee shall make all documents and information (other than documents and information that are subject to a privilege, the work product doctrine or similar doctrine, or confidentiality) relating to the Customer Claim Report available to all Customers via an online data room or such other method as the MVMMC Trustee determines or as otherwise agreed to by the MVMMC Trustee and the Customer.

**Response to the Customer Claim Report.** Any Customer that disputes the MVMMC Trustee's proposed treatment of its Customer Claim must File a Response with the Bankruptcy Court and serve such Response on the MVMMC Trustee within forty-five (45) days of the date the Customer Claim Report is Filed. The Response shall set forth the Customer's legal and factual basis for asserting a Customer Claim or for otherwise disputing any portion of the Customer Claim Report. Any Customer who Files a Response shall bear the burden of proving that an asserted Customer Claim should be an Allowed Customer Claim.

**Hearing to Consider the Customer Claim Report.** Within ninety (90) days of the Filing of the Customer Claim Report, or such other time as the Bankruptcy Court deems appropriate, the Bankruptcy Court shall conduct the Customer Claim Hearing to consider the Customer Claim Report and any timely Filed and served Responses thereto. At the conclusion of the Customer Claim Hearing, the Bankruptcy Court shall enter the Allowed Customer Claim Order. The Customer Claim Hearing with respect to an individual Customer Claim may be adjourned upon the consent of both the MVMMC Trustee and the Customer, or with the approval of the Bankruptcy Court.

**Preservation of Causes of Action; Settlement of Litigation Claims.**

**Preservation of Rights of Action.** On the Effective Date, the MVMMC Trustee, on behalf of the MVMMC Trust, shall be vested with authority and standing to prosecute any claim on the Effective Date and the Preserved Causes of Action and to compromise, settle, or litigate the Preserved Causes of Action. The Professionals retained by the Debtors, the Committee and individual Committee members, the MVMMC Trustee, and all of their existing and former

directors, managers, officers, attorneys, and other professional advisors, shall have no liability for pursuing or failing to pursue any Causes of Action. For the avoidance of doubt, a list of all known potential defendants and the nature of the Preserved Causes of Action against each will be disclosed in the Plan Supplement.

**Release of Avoidance Actions.** In recognition of the circumstances leading to these Cases, the Proponents have exercised their fiduciary duties and business judgment to determine that releasing all Avoidance Actions, other than Avoidance Actions in which claims may be asserted against any Insider, is in the best interests of the Estates and all Creditors. Moreover, the Receiver was appointed to operate the Debtors' business more than ninety (90) days prior to the Petition Date. During this period, monies expended by the Receiver were for the sole purpose of winding down the Debtors' businesses. For these reasons, upon the Effective Date, all Avoidance Actions shall be unconditionally and irrevocably waived and released by the Debtors and the MVMMC Trust, other than: (i) Avoidance Actions in which any Insider is or may be named as a defendant and (ii) any claim or Cause of Action against Signature Bank or the Debtors' insurance providers, companies, or carriers which may provide a potential benefit to the Debtors' Estates.

**Settlement of Litigation Claims and Disputed Claims.** At any time prior to the Effective Date, the Debtors, with the consent of the Committee, may settle some or all of the Causes of Action or Disputed Claims subject to obtaining any necessary Bankruptcy Court approval. The net proceeds (after deducting reasonable attorneys' fees and costs) from the settlement of a Preserved Cause of Action shall constitute an MVMMC Trust Asset and shall be transferred to the MVMMC Trust on or after the Effective Date.

As set forth in greater detail in section 6.13 of the Plan and the MVMMC Trust Agreement, the MVMMC Trustee shall have the authority to pursue and/or settle Claims on behalf of the MVMMC Trust, including any Customer Claims.

**Provisions Governing Distributions Generally.**

The Plan provides for Distributions to Creditors to be made as follows.

**Distributions for Claims Allowed as of the Effective Date.** Except as otherwise ordered by the Bankruptcy Court in a Final Order, including the Allowed Customer Claim Order, following the Effective Date, Distributions shall be made by the MVMMC Trustee pursuant to the Plan. Distributions on account of any Claim that first becomes an Allowed Claim after the Effective Date shall be made on the first Distribution Date after such Claim becomes an Allowed Claim. The MVMMC Trustee may withhold from the MVMMC Trust Assets and each Distribution of MVMMC Trust Assets an amount of Cash reasonably estimated to be necessary to pay the expenses incurred by the MVMMC Trustee in administering the MVMMC Trust, to establish the Non-Customer Disputed Claim Reserve, and to ensure that no Distribution on account of any Allowed Claim exceeds 100% of the Allowed amount of such Claim.

**Initial Distribution**. The initial Distribution Date shall be a Business Day that is not more than thirty (30) days following the date on which both the Restitution Order and the Allowed Customer Claim Order have become Final Orders. Subsequent Distributions, if any, will be made on a periodic basis on account of Claims that become Allowed between the prior Distribution Date and the subsequent Distribution Date.

**Means of Cash Payment.** Cash payments made pursuant to the Plan shall be in U.S. funds, by the means, including by check or wire transfer, determined by the MVMMC Trustee.

**Delivery of Distributions.** Distributions to Holders of Allowed Claims shall be made (i) at the addresses set forth on the Proofs of Claim Filed by such Holders (or at the last known addresses of such Holders if no Proof of Claim is Filed or if the Debtors has been notified of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to the MVMMC Trustee; or (iii) if no Proof of Claim has been Filed and the MVMMC Trustee has not received a written notice of a change of address, at the addresses reflected in the Bankruptcy Schedules, if any.

**Prosecution of Objections to Non-Customer Claims.** As soon as reasonably practicable, but in no event later than the Claims Objection Deadline (unless extended, after notice to those creditors who requested notice in accordance with Bankruptcy Rule 2002, by an

Order of the Bankruptcy Court), the MVMMC Trustee, on behalf of the MVMMC Trust, shall File objections to Non-Customer Claims (all objections to Customer Claims being included in the Customer Claim Report) and serve such objections upon the Holders of each of the Non-Customer Disputed Claims. Nothing contained in the Plan shall limit the MVMMC Trustee's right to object to Non-Customer Claims, if any, Filed or amended after the Claims Objection Deadline on behalf of the MVMMC Trust. The MVMMC Trustee, on behalf of the MVMMC Trust, shall be authorized to settle and resolve any Non-Customer Disputed Claim, on behalf of the MVMMC Trust, by withdrawing or settling objections thereto without a further order of the Bankruptcy Court.

**Record Date for Distributions.** The MVMMC Trustee, on behalf of the MVMMC Trust, will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Record Date, and will be entitled for all purposes in the Plan to recognize and distribute only to those Holders of Allowed Claims that are Holders of such Claims, or participants therein, as of the close of business on the Record Date. The MVMMC Trustee, on behalf of the MVMMC Trust, shall instead be entitled to recognize and deal for all purposes under the Plan with only those Holders indicated on the official claims register as of the close of business on the Record Date.

**No Distributions Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or Distributions by the MVMMC Trustee, on behalf of the MVMMC Trust, shall be made with respect to all or any portion of a Disputed Claim unless and until all Avoidance Actions with respect to the Holder of such Claim and all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

**Establishment and Maintenance of Reserve for Non-Customer Disputed Claim Reserve.** Upon the filing of any Claim Objection, the MVMMC Trustee, on behalf of the MVMMC Trust, shall establish the Non-Customer Disputed Claim Reserve. The amount of Cash deposited into the Non-Customer Disputed Claim Reserve shall be equal to the percentage

of Cash to which Holders of Non-Customer Disputed Claim would be entitled under the Plan if such Claims were Allowed Claims in the amount asserted by the Holder of such Non-Customer Disputed Claim or such lesser amount as authorized by a Final Order. For the purposes of effectuating the provisions of section 7.8 of the Plan and the Distributions to Holders of Allowed Claims, the MVMMC Trustee may, on behalf of the MVMMC Trust, at any time and regardless of whether a Claim Objection to a Non-Customer Disputed Claim has been Filed, request that the Bankruptcy Court estimate, set, fix, or liquidate the amount of such Non-Customer Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so estimated, fixed, or liquidated shall be deemed the Allowed amounts of such Claims for purposes of Distribution under the Plan. In lieu of estimating, fixing, or liquidating the amount of any Non-Customer Disputed Claim, the Bankruptcy Court may determine the amount to be reserved for such Non-Customer Disputed Claims (singularly or in the aggregate), or such amount may be fixed as to a particular Holder of a Non-Customer Disputed Claim by an agreement in writing by and between the MVMMC Trustee and the Holder of such Claim.

**Distributions Upon Allowance of Non-Customer Disputed Claims.** The Holder of a Non-Customer Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive a Distribution from the Non-Customer Disputed Claim Reserve as soon as practical following the date on which such Non-Customer Disputed Claim becomes an Allowed Claim. Such Distributions shall be made in accordance with the Plan based upon the Distributions that would have been made to each such Holder under the Plan if the Non-Customer Disputed Claim had been an Allowed Claim on the Effective Date. No Holder of a Non-Customer Disputed Claim shall have any Claim against the Non-Customer Disputed Claim Reserve, the MVMMC Trustee, or the Debtors with respect to such Claim until such Non-Customer Disputed Claim shall become an Allowed Claim, and no Holder of a Non-Customer Disputed Claim shall have any right to interest, dividends, or other Distribution on such Non-Customer Disputed Claim except as provided in section 7.9 of the Plan.

**Surplus Distribution.**   To the extent that a Non-Customer Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Non-Customer Disputed Claim amount, any excess of Cash in the Non-Customer Disputed Claim Reserve attributable to such Non-Customer Disputed Claim in excess of Cash actually distributed on account on such Non-Customer Disputed Claim shall be deemed Surplus Distributions.   The MVMMC Trustee shall make a supplemental Distribution or Distributions of the Surplus Distributions to Holders of Allowed Claims on a Pro Rata basis on the next Distribution Date thereafter.

**Undeliverable Distributions.**   If any Distribution is returned as undeliverable, the MVMMC Trustee shall make such efforts as he or she deems appropriate to determine the current address of the Holder of the Claim.   Amounts in respect of any undeliverable Distributions made by the MVMMC Trustee shall be returned to the MVMMC Trust until the Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and the Plan ("**Unclaimed Property**").

**Unclaimed Property.**  Distributions that are not claimed within one year from the date of the Distribution shall be deemed to be Unclaimed Property and shall vest or revest in the MVMMC Trust for the benefit of the MVMMC Trust Beneficiaries, and the Claims with respect to which those Distributions were made shall be automatically canceled.  After the expiration of that one-year period, the Claim of any Person to such Distributions shall be discharged and forever barred.  Nothing contained in the Plan or the MVMMC Trust Agreement shall require the MVMMC Trustee, on behalf of the MVMMC Trust, to attempt to locate any Holder of an Allowed Claim.  All funds or other property that vests or revests in the MVMMC Trust for the benefit of the MVMMC Trust Beneficiaries pursuant to the Plan shall be distributed by the MVMMC Trustee, on behalf of the MVMMC Trust, to the remaining Holders of Allowed Claims in accordance with the provisions of the Plan and the MVMMC Trust Agreement.  A Claim, and the Unclaimed Property distributed on account of such Claim, shall not escheat to any federal, state, or local government or other entity by reason of the failure of its Holder to claim a Distribution in respect of such Claim.

**Time Bar to Cash Payments by Check.**  Checks issued by the MVMMC Trustee, on behalf of the MVMMC Trust, on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to the Plan shall be made directly to the MVMMC Trustee by the Holder of the Allowed Claim to whom the check was originally issued.  Any Claim in respect of such voided check shall be made in writing on or before the first anniversary of the date the check was issued, or shall be discharged and forever barred.  The funds that would otherwise constitute the proceeds of such checks shall revest in and become property of the MVMMC Trust for the benefit of the MVMMC Trust Beneficiaries as Unclaimed Property in accordance with section 347(b) of the Bankruptcy Code, and be distributed as Unclaimed Property in accordance with the Plan.

**Withholding and Reporting Requirements.**  In connection with the Plan and all Distributions hereunder, the MVMMC Trustee shall, on behalf of the MVMMC Trust and to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  The MVMMC Trustee, on behalf of the MVMMC Trust, shall be authorized to take any and all actions that may be reasonably necessary or appropriate to comply with such withholding and reporting requirements.

**Distributions on Non-Business Days.**  Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

**No Distribution in Excess of Allowed Amount of Claim.**  Notwithstanding anything to the contrary in the Plan, subject to section 4.8 of the Plan, the aggregate Distribution or Distributions, including any Third Party Payments, to a Holder of a Claim shall not exceed the Allowed amount of such Claim.  If a Holder of an Allowed Claim receives a Distribution or Distributions under the Plan that, together with any Third Party Payments, exceeds the total amount of the related Allowed Claim, the Holder shall, within five (5) Business Days, refund such excess amounts to the MVMMC Trustee.  The MVMMC Trustee, on behalf of the

MVMMC Trust, may seek the return of any such excess amounts by the commencement of a contested matter or adversary proceeding in the Bankruptcy Court.

*De Minimis* **Distributions**. No Cash payment of less than ten dollars ($10.00) will be made by the MVMMC Trustee, on behalf of the MVMMC Trust, to any Creditor unless a request is made in writing to the MVMMC Trustee to make such a payment.

**Fractional Dollars**. Notwithstanding any other provision of the Plan, Cash Distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property under this Plan.

**Setoff and Recoupment.** The MVMMC Trustee, on behalf of the MVMMC Trust, may, but shall not be required to, setoff against or recoup from any Claim and the Distribution to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any of the Debtors, the Estates, the MVMMC Trust or the MVMMC Trustee may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates, the MVMMC Trust or the MVMMC Trustee of any claim, defense, right of setoff, or recoupment that any of them may have against the Holder of any Claim.

**Reports of Third Party Payments.** Within five (5) Business Days of the receipt of a Third Party Payment, the Holder of an Allowed Claim shall notify the MVMMC Trustee in writing of (i) the name of the Holder, (ii) the amount of such Holder's Allowed Claim in respect of which such payment was received, (iii) the amount of any such payment received or rights of setoff exercised, and (iv) the source of such Third Party Payment.

**Dissolution of Committee**. The Committee shall automatically be dissolved on the Confirmation Date and the members of, and Professionals retained by, the Committee shall have no further duties or obligations after the Confirmation Date.

**Treatment of Executory Contracts and Unexpired Leases.**

  **Executory Contracts and Unexpired Leases Deemed Rejected.** All of the Debtors' executory contracts and unexpired leases, other than the Insurance Policies, shall be deemed rejected on the Effective Date, except to the extent that the Debtors have (i) previously assumed or rejected an executory contract or unexpired lease or (ii) Filed or File a motion, prior to the Effective Date, to assume an executory contract or unexpired lease upon which the Bankruptcy Court has not ruled. For the avoidance of doubt, pursuant to section 365 of the Bankruptcy Code, all Insurance Policies shall be assumed on the Effective Date.

  **License Agreements.** All parties to license agreements who are entitled to the election of remedies pursuant to section 365(n)(1) of the Bankruptcy Code will be deemed to have (i) elected treatment pursuant to 11 U.S.C. § 365(n)(1)(A) and (ii) waived their right to treatment pursuant to 11 U.S.C. § 365(n)(1)(B). However, prior to the Confirmation Hearing Date, such parties are entitled to a section 365(n)(1) election if they have notified the Debtors, in writing, of their election to proceed under subsection (B) and have waived their claims against the Debtors, as provided in 11 U.S.C. § 365(n)(2)(C)(i) and (ii).

**Effects of Confirmation.**

  **Legal Binding Effect.** Except as otherwise provided in Article IX of the Plan, the provisions of the Plan shall bind all Holders of Claims and Interests and their respective successors and assigns, whether or not they accept the Plan. On and after the Effective Date, except as provided in the Plan, all Holders of Claims and Interests shall be precluded from asserting any Claim against the Debtors, the Estates, the Committee, the MVMMC Trust, or the MVMMC Trustee, or their respective property and Assets based on any transaction or other activity of any kind that occurred prior to the Effective Date. The Bankruptcy Court's determinations pertaining to the Allowed Customer Claims shall be for the purposes of deciding issues within the Cases and shall not have any precedential, *res judicata*, or collateral estoppel effects outside of the Cases. For the avoidance of doubt, section 9.1 of the Plan will not impact claims against the Debtors' insurance providers, companies, or carriers.

**Moratorium, Injunction, and Limitation of Recourse for Payment.** Subject to Article 9.4 of the Plan, and except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that from and after the Effective Date, all Persons who have held, hold, or may hold Claims against, or Interests in, the Debtors are permanently enjoined from taking any of the following actions against the Estates, the Debtors, the Committee or any member of the Committee, the MVMMC Trust, the MVMMC Trustee, any of their respective employees, managers, officers, directors, agents, attorneys, investment bankers, financial advisors, or other professionals, or any of their respective property or other Assets on account of any such Claims or Interests, except for acts or omissions that constitute willful misconduct, gross negligence, fraud or violations of any applicable Rules of Professional Conduct: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; and (iv) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained in the Plan or in the Confirmation Order shall preclude (x) the MVMMC Trust or the MVMMC Trustee from pursuing any Preserved Causes of Action, (y) any Person from exercising their rights pursuant to or not inconsistent with the terms of the Plan, or (z) the MVMMC Trustee from exercising his or her rights or remedies pursuant to and not inconsistent with the terms of the Plan or the MVMMC Trust Agreement.

**Exculpation and Limitation of Liability.** The Receiver, and professionals retained by the Receiver, first became involved in these cases after the United States Government seized certain assets of the Debtors. The seizure took place after the fraud was allegedly perpetuated by the Debtors and its directors and officers came to light. The Receiver, and the professionals retained by the Receiver, are not Insiders of the Debtors, as defined in section 101(36) of the Bankruptcy Code. The Receiver, and the professionals retained by the Receiver, shall not be liable for any acts occurring prior to the Petition Date.

Similarly, the Committee, and professionals retained by the Committee, became involved in these cases after the fraud that was allegedly perpetuated by the Debtors and its directors and officers came to light. The Committee, and the professionals retained by the Committee, are not Insiders of the Debtors, as defined in section 101(36) of the Bankruptcy Code and shall not be liable for any acts occurring prior to the Petition Date or any acts resulting from or related to acts occurring prior to the Petition Date.

To the fullest extent permitted under section 1125(e) of the Bankruptcy Code and applicable law, subject to section 9.4 of the Plan, no Holder of a Claim or Interest shall have any right of action against the Receiver, Debtors, the Estates, the Committee or any member of the Committee, the MVMMC Trustee, the MVMMC Trust, any of their respective employees, managers, officers, directors, agents, attorneys, investment bankers, financial advisors, other professionals, or any of their respective property and Assets for any act or omission in connection with, relating to, or arising out of the Cases, the pursuit of Confirmation hereof, the consummation hereof, or the administration of the MVMMC Trust, the Plan, or the property to be distributed under the Plan, except for acts or omissions that constitute willful misconduct, gross negligence, fraud or violations of any applicable Rules of Professional Conduct.

**No Discharge of Government Claims.** Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state or local authority against the Estates, the Debtors, the Committee or any member of the Committee, the MVMMC Trustee, the MVMMC Trust, or any of their respective employees, managers, officers, directors, agents, attorneys, investment bankers, financial advisors or other professionals, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceeding against any party for any liability whatsoever, including, without limitation, any claim, suit, or action arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the

United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state or local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state or local authority against the released parties.

**Retention of Jurisdiction**. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Cases, the Plan, and the MVMMC Trust to the fullest extent permitted by law, including, among other things, jurisdiction to:

(1)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim (including all Customer Claims), including the resolution of any application or request for payment of any Administrative Expense Claim, and the resolution of any objections to the allowance or priority of Claims;

(2)    hear and determine all Professionals' applications for compensation and reimbursement of expenses incurred in the Case;

(3)    determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all Preserved Causes of Action vested in the MVMMC Trust, and consider and act upon the compromise and settlement of any Claim against, or Preserved Causes of Action on behalf of, the MVMMC Trust;

(4)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, the MVMMC Trust Agreement, and all contracts, instruments, releases, and other agreements or documents created in connection therewith;

(5)    hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan or the MVMMC Trust Agreement, including disputes arising under agreements, documents, or instruments executed in connection therewith;

(6)    consider any modifications of the Plan or the MVMMC Trust Agreement, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(7)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(8)     hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, the MVMMC Trust Agreement or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, the Confirmation Order or the MVMMC Trust Agreement;

(9)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Cases;

(10)    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(11)    hear and determine all matters related to the property of the Estates, the Debtors, the MVMMC Trust, or the MVMMC Trustee from and after the Effective Date;

(12)    hear and determine such other matters as may be provided in the Plan, the Confirmation Order, and as may be authorized under the provisions of the Bankruptcy Code; and

(13)    hear and determine all matters related to Customer Claims, Customer Claim Report, or Objections to the Customer Claim Report and issue the Allowed Customer Claim Order, and any appeals thereto;

(14)    enter a final decree closing a Case or the Cases.

**Miscellaneous Provisions of the Plan.**

**Severability of Plan Provisions.**  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Proponents (upon appropriate notice to one another), shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The

Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Exemption from Transfer Taxes.** In accordance with section 1146(a) of the Bankruptcy Code, the Bankruptcy Court will be requested to make findings, in the Confirmation Order, that the sale of the Debtors' Assets pursuant to one or more Final Orders authorizing and approving such sale(s) shall not be taxed under any law imposing stamp or similar tax. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any stamp or similar tax.

**Interest Accrual.** No postpetition interest shall accrue on any Claim or scheduled liability, except as set forth in the Plan.

**Allocation of Plan Distributions between Principal and Interest.** To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first, and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**Rules of Interpretation; Computation of Time.** For purposes of the Plan, (i) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document as being in a particular form or containing particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (iii) unless otherwise specified, all references in the Plan to sections, articles, and exhibits, if any, are references to sections, articles, and exhibits of or to the Plan; (iv) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion thereof; (v)

captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (vi) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply. In computing any period of time prescribed or allowed by the Plan, unless otherwise specifically designated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**Plan Documents.** The Plan Documents are incorporated in the Plan and are a part of the Plan as if set forth in full in the Plan.

**Successors and Assigns.** The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person.

**Governing Law.** Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, (i) the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (ii) governance matters shall be governed by the laws of the State of New York, without giving effect to the principles of conflict of law thereof.

**Notice of Effective Date.** Within five (5) Business Days after the occurrence of the Effective Date, the MVMMC Trustee shall File with the Bankruptcy Court and mail or cause to be mailed to all Holders of Allowed Claims in Class 2 (Customer Claims), Class 3 (General Unsecured Claims), and Class 4 (Convenience Claims) a notice that informs such Persons of (i) the entry of the Confirmation Order, (ii) the occurrence of the Effective Date, and (iii) such other matters as the MVMMC Trustee deems appropriate or as may be ordered by the Bankruptcy Court. The aforesaid notice shall also be served upon the U.S. Trustee and Filed with the Court. In the event the Effective Date does not occur within thirty (30) days of the Confirmation Date, pursuant to section 11.9 of the Plan, the Proponents shall file with the Bankruptcy Court a *Notice of Failure to Achieve Effective Date* and shall request a status conference with the Bankruptcy Court. The foregoing notice shall be served upon the U.S. Trustee and all parties requesting notice and service of pleadings pursuant to Bankruptcy Rule 2002.

# ARTICLE VI.
## RISK FACTORS

Holders of Claims against and Interests in the Debtors who are entitled to vote to accept or reject the Plan should carefully consider the risk factors set forth below prior to voting to accept or reject the Plan:

**Failure to Receive Requisite Accepting Votes.**

Acceptance of the Plan requires the affirmative vote of at least two-thirds (2/3) in dollar amount <u>and</u> more than one-half (1/2) in number of the voting Holders of Claims in each Class. If the requisite votes are not received to accept the Plan, and if the Plan is not confirmed by the Bankruptcy Court pursuant to the so-called "cram down" provision of section 1129(b) of the Bankruptcy Code, the Debtors may seek to liquidate the Estate in accordance with chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of a liquidation under chapter 7 of the Bankruptcy Code would be similar to or as favorable to Holders of Claims and Interests as those proposed in the Plan. The Proponents believe that the financial results of a proceeding under chapter 7 of the Bankruptcy Code would be less favorable to such Holders.

**Customer Claims.**

On or before the Customer Claim Report Deadline, the MVMMC Trustee shall File the Customer Claim Report and serve it via regular mail upon (among other recipients) each Customer that timely asserted a Customer Claim by Filing a Proof of Claim. There is a potential that the Bankruptcy Court may determine that the amount of Allowed Customer Claims exceeds the total amount of MVMMC Trust Assets. In this instance, Holders of Allowed Customer Claims will not be fully satisfied and will receive no funds from the MVMMC Trust.

**Risk of Non-Confirmation of the Plan.**

Although the Proponents believe that the Plan satisfies all legal requirements necessary for Confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan. There can also be no assurance that modifications to the Plan will not be

required for Confirmation or that such modifications would not necessitate re-solicitation of votes to accept or reject the Plan.

**Risk of Additional or Larger Claims.**

The Disclosure Statement and its attached exhibits necessarily include estimates, including estimates of future events. These estimates include, without limitation, estimates of future income and expenses, estimates as to the total amount of Claims that will be asserted against the Debtors and the outcome of Disputed Claims. The Proponents believe that the estimates presented are reasonable and appropriate under the circumstances. Nevertheless, there is a risk that unforeseen future events may cause one or more of these estimates to be materially inaccurate. Among the potential risks are the risk that additional prepetition or Administrative Expense Claims may be asserted, that Disputed Claims may be resolved at higher amounts than expected or in different classes than expected, or that the resolution of such Claims may require the expenditure of unanticipated professional fees. If one or more of these estimates proves to be inaccurate, the amount of funds available for Distribution pursuant to the Plan may be reduced.

## ARTICLE VII.
## FEASIBILITY OF THE PLAN

As a condition to Confirmation, Bankruptcy Code section 1129(a)(11) requires that the Proponents show that confirmation is not likely to be followed by the liquidation of the Debtors or the need for further financial reorganization, unless such liquidation or reorganization is a component of the Plan.

The Plan provides for the Debtors' Assets to be liquidated for the benefit of Holders of Claims in the manner and on the terms set forth in the Plan. Accordingly, the Proponents submit that the requirements of Bankruptcy Code section 1129(a)(11) are inapplicable to the Debtors' Cases.

## ARTICLE VIII.
## BEST INTERESTS TEST

Notwithstanding acceptance of a chapter 11 plan by each Impaired Class, the Bankruptcy Court must also determine that the plan is in the best interests of each Holder of an impaired Claim or Interest that has not voted to accept the plan. Accordingly, if an impaired Class does not unanimously accept the Plan, the best interests test of Bankruptcy Code section 1129(a)(7) requires that the Bankruptcy Court find that the plan provides to each Holder of such Claim or Interest a recovery on account thereof that has a value at least equal to the amount that such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

To estimate the recovery of an impaired Holder of a Claim or Interest under a chapter 7 liquidation, the Bankruptcy Court first determines the aggregate dollar amount that would be available if the chapter 11 case were converted to a chapter 7 case and the assets of the Debtors liquidated by a chapter 7 trustee. The liquidation value would consist of the net proceeds of the disposition of the Assets and Cash held by the Debtors, reduced by the additional increased costs of liquidation and the administrative claims that would arise in a chapter 7 liquidation case but that do not arise in a chapter 11 case.

The additional costs and expenses of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a chapter 7 trustee and compensation for services rendered and reimbursement of disbursements incurred on behalf of such trustee's counsel and other professionals, disposition expenses, litigation costs, and claims arising during the pendency of the chapter 7 liquidation case. The liquidation itself may trigger certain priority claims, which must be paid out of liquidation proceeds before the balance is made available to pay other claims.

In a chapter 7 liquidation, Holders of Claims would likely receive a lesser distribution from the Debtors than under the Plan. Because the Plan calls for the payment of a greater distribution to Holders of Claims than would be paid in a chapter 7 liquidation, the Proponents

believe that the Plan is the more favorable alternative. Accordingly, the Proponents submit that the Plan satisfies the best interests test set forth in section 1129(a)(7) of the Bankruptcy Code.

A liquidation analysis is annexed hereto as **Exhibit B** to assist interested parties in ascertaining whether the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. Because the amount of potential litigation proceeds is unknown, the liquidation analysis only includes Assets currently known. The liquidation analysis does not include estimates as to recoveries that may be obtained from future litigation. However, recoveries from future litigation may provide a substantial benefit to Holders of Allowed Claims.

### ARTICLE IX.
### TITLE TO PROPERTY AND TAX CONSEQUENCES

**Vesting of Property.**

Upon the Effective Date, all Assets of the Debtors, but not including the Purchaser's Contribution, shall vest in the MVMMC Trust free and clear of all Liens, security interests, Interests, and Claims of Creditors, except obligations pursuant to the Plan and Confirmation Order.

**Tax Consequences of Confirmation.**

**Circular 230 Disclaimer.** TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, EACH HOLDER IS HEREBY NOTIFIED THAT: (I) ANY DISCUSSION OF UNITED STATES FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY ANY HOLDER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A HOLDER UNDER THE INTERNAL REVENUE CODE; (II) SUCH DISCUSSION IS INCLUDED HEREIN BY THE DEBTORS IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) BY THE DEBTORS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (III) EACH HOLDER SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

Confirmation and having a beneficial interest in the MVMMC Trust may have federal, state, local and foreign income tax consequences for the Debtors and Holders of Claims or Interests. The Proponents have not obtained and do not intend to request a ruling from the IRS, nor have the Proponents obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters raised by Confirmation of the Plan are governed by the Internal Revenue Code and the regulations promulgated thereunder. Creditors and Holders of Interests are urged to consult their own counsel and tax advisors as to the consequences to them, under federal and applicable state, local, and foreign tax laws, of the Plan. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional. The federal, state, and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain. Accordingly, each Holder of a Claim or Interest is strongly urged to consult with his or her own tax advisor regarding the federal, state, and local tax consequences of the Plan.

**Tax Consequences to the Debtors.** The Debtors may not recognize income as a result of the discharge of debt pursuant to the Plan because section 108 of the Internal Revenue Code provides that taxpayers in bankruptcy proceedings do not recognize income from the discharge of debt. However, a taxpayer is required to reduce its "tax attributes" by the amount of the debt discharged. Tax attributes are generally reduced in the following order: (i) net operating losses; (ii) general business credits; (iii) minimum tax credits; (iv) capital loss carryovers; (v) basis in assets; (vi) passive activity loss and credit carryovers; and (vii) foreign tax credits carryovers.

**Tax Consequences to Unsecured Creditors.** An Unsecured Creditor that receives Cash and/or other property in satisfaction of its Claim may recognize gain or loss, with respect to the principal amount of the Claim, equal to the difference between (i) the Creditor's basis in the Claim (other than the portion of the Claim, if any, attributable to accrued interest) and (ii) the balance of the Cash and/or other property received after any allocation to accrued interest. The character of the gain or loss as capital gain or loss, or ordinary income or loss, will generally be determined by whether the Claim is a capital asset in the Creditor's hands. A Creditor will also

recognize ordinary income or loss in respect of consideration received for accrued interest on the Claim. A Creditor may also recognize gain or loss or otherwise have income as a result of having a beneficial interest in the MVMMC Trust during the pendency of the MVMMC Trust.

**DISCLAIMER. HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT RELY ON THIS DISCLOSURE STATEMENT WITH RESPECT TO THE TAX CONSEQUENCES OF THE PLAN. THEY SHOULD CONSULT WITH THEIR OWN TAX COUNSEL OR ADVISOR. THE DISCUSSION OF TAX CONSEQUENCES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED TO BE A COMPLETE DISCUSSION OR ANALYSIS.**

## ARTICLE X.
## NOTICES

All notices required or desired to be given pursuant to or in connection with the Plan shall be made to the following addresses:

| | |
|---|---|
| If to the Debtors or Receiver: | Mount Vernon Monetary Management Corp.<br>c/o FTI Consulting, Inc.<br>3 Times Square, 9th Floor<br>New York, New York 10036<br>Attention: Allen D. Applbaum |
| With a copy to<br>(which shall not constitute notice): | Greenberg Traurig LLP<br>The Met Life Building<br>200 Park Avenue<br>New York, New York 10166<br>Attention: Allen G. Kadish, Esq. |
| If to the Committee: | Lowenstein Sandler PC<br>1251 Avenue of the Americas, 18th Floor<br>New York, New York 10022<br><br>-- and --<br><br>65 Livingston Avenue<br>Roseland, New Jersey 07068<br>Attention: S. Jason Teele, Esq. |

| If to the MVMMC Trustee: | Kelly Beaudin Stapleton |
|---|---|
| | Managing Director |
| | MorrisAnderson & Associates, Ltd. |
| | 1540 Broadway, Suite 3940 |
| | New York, New York 10036 |

| With a copy to | |
|---|---|
| (which shall not constitute notice): | Lowenstein Sandler PC |
| | 1251 Avenue of the Americas, 18th Floor |
| | New York, New York 10022 |
| | -- and -- |
| | 65 Livingston Avenue |
| | Roseland, New Jersey 07068 |
| | Attention: S. Jason Teele, Esq. |

## ARTICLE XI.
## CONCLUSION

Based on the information in this Disclosure Statement, the Proponents believe that confirmation of the Plan is in the best interests of the Debtors, the Estate and holders of Claims against and Interests in the Debtors. Accordingly, the Proponents ask that Creditors vote in favor of the Plan on the enclosed ballot and return the ballot as described above and on the ballot.

**[BALANCE OF PAGE LEFT BLANK INTENTIONALLY]**

## RECOMMENDATION

THE PROPONENTS RECOMMEND THAT YOU VOTE TO "ACCEPT" THE PLAN. THE PROPONENTS BELIEVE THAT CONFIRMATION OF THE PLAN IS PREFERABLE TO ANY OF THE ALTERNATIVES DESCRIBED ABOVE. ANY OTHER ALTERNATIVE WOULD CAUSE SIGNIFICANT DELAY AND UNCERTAINTY, AS WELL AS ADDITIONAL ADMINISTRATIVE COSTS. THE PLAN IS DESIGNED TO PROVIDE GREATER RECOVERIES THAN THOSE AVAILABLE IN ANY OTHER FORM OF LIQUIDATION.

Respectfully submitted,


By: ___Allen G. Kadish_____      By: ___S. Jason Teele_____

**GREENBERG TRAURIG, LLP**      **LOWENSTEIN SANDLER, PC**
Allen G. Kadish, Esq.      S. Jason Teele, Esq.
Burke A. Dunphy, Esq.      Sharon L. Levine, Esq.
200 Park Avenue      Cassandra M. Porter, Esq.
New York, New York 10166      65 Livingston Avenue
     Roseland, New Jersey 07068

*Attorneys for Mount Vernon Monetary*
*Management Corp., et al., Debtors and*      *Attorneys for the Official Committee of*
*Debtors-in-Possession*      *Unsecured Creditors*