**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                    :

**In re:**                                 :       Chapter 11
                                      :

**MOUNT VERNON MONETARY**      :       Case No. 10-23053 (RDD)
  **MANAGEMENT CORP.,** *et al.,*    :
                                      :       Jointly Administered

                **Debtors.**        :
                                      :
-------------------------------------------------------------------x

<u>**ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF**</u>
<u>**THE ASSETS OF DEBTOR NOWCASH, LTD., TO F.A.M. CAPITAL, LLC**</u>

Upon the motion (the "**Motion**") of Mount Vernon Monetary Management Corp. and its affiliates and related entities (collectively, the "**Debtors**") [1] seeking an order (the "**Bid Procedures Order**") (i) (a) approving the Interim ATM Services Agreement (the "**Services Agreement**") between Allen D. Applbaum, in his capacity as receiver for the assets of the Debtors, including NowCash, Ltd. ("**NowCash**") and F.A.M. Capital, LLC ("**FAM**" or the "**Purchaser**") on an interim basis pending entry of a final order approving the sale (the "**Sale**") of substantially all of NowCash's assets (the "**Purchased Assets**"); (b) establishing bidding and auction procedures (the "**Bid Procedures**") related to the sale of the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests pursuant to Sections 105, 363(b), (f), and (m) and 365 of the United States Bankruptcy Code (the "**Bankruptcy Code**"); (c) approving proposed bid protections in favor of FAM; (d) approving that certain Asset Purchase Agreement

---

[1] The Debtors are: 1540 Roosevelt Avenue, LLC; 185 LLC; 415 Huguenot LLC; 44 N. Saw Mill, LLC; American Armored Car, Ltd.; Annex Corp.; Armored Money Services, LLC; ATM Management, LLC; Barron ATM Corp.; Crystal Public Communications, Inc.; District Central Station Alarm Corp.; District Central Alarm Service Corp.; District Security Services, LLC; EZ-KI Realty Corp; EZ-RI Realty Corp.; GNC Payroll Plus, Inc.; GT Public Services, Inc. (f/k/a Public Access Networks Services Inc.); Manhattan Money Branch.com, Inc.; Michelle Corp.; MKey, LLC; Money Kiosk Corp.; Montgomery Check Cashing Corp.; Mount Vernon Monetary Management Corp.; Mount Vernon Money Center Corp. (a/k/a/ MVMC Corp.); M.V.M.C. Service Station, Inc.; MVMC Holding Corp.; MVMC Service, Inc.; MVMM Corp.; NowCash, Ltd.; Quick Cash, LLC; Time Square Payment Center, Inc.; Vet's ATM Corp.; and Zipes Equities, Ltd.

(the "**Purchase Agreement**") between the Debtors and FAM solely to the extent of its use as a form which all other bidders for the Purchased Assets must follow; (e) scheduling an auction (the "**Auction**") and setting a date and time for a sale hearing (the "**Sale Hearing**") for the sale of the Purchased Assets; and (f) other related relief; and (ii) approving the Sale [Docket No. 117]; and it appearing that the Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that this matter is core pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O); and it appearing that venue is proper in this district pursuant to 28 U.S.C. § 1408; and upon the *Declaration of Allen D. Applbaum in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 3]; and upon the entry of the Bid Procedures Order; and there being due and sufficient notice of the Motion and the Sale Hearing; and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted on the record of the Sale Hearing; and upon the *Debtors' Response to Objection of Eagle Express Services Inc., to Sale of Assets of NowCash, Ltd.* [Docket No. 253]; and upon the *Notice of Debtors' Intent to Assume and Assign Certain Executory Contracts* (the "**Notice of Assumption and Assignment**") [Docket No. 255]; and upon the Bid Procedures Order [Docket No. 226] and the record of the Sale Hearing and all of the proceedings in these cases had before the Court; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED:**[2]

---

[2] All findings of fact and conclusions of law announced by the Bankruptcy Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate pursuant to Bankruptcy Rule 7052, as made applicable by Bankruptcy Rule 9014.

# I.     General Findings and Notice

A.     The Bankruptcy Court has jurisdiction, pursuant to 28 U.S.C. §§ 157 and 1334, over this matter and over the property of the Debtors' estates, including the Purchased Assets to be sold, transferred or conveyed pursuant to the Purchase Agreement. This matter is core pursuant to 28 U.S.C. § 157(b)(2). Venue of these Chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. § 1408.

B.     On May 27, 2010 (the **"Petition Date"**), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

C.     On June 11, 2010, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors in the Debtors' cases (the "**Committee**") pursuant to Section 1102 of the Bankruptcy Code.

D.     As evidenced by the affidavits of service filed with the Bankruptcy Court, proper, timely, adequate, and sufficient notice of the Motion, the Auction, and the Sale Hearing and a reasonable opportunity to object thereto have been provided in accordance with Sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the Local Rules of this Court, and in compliance with the Bid Procedures Order and the *Order (I) Establishing Notice Procedures and (II) Authorizing (A) Preparation of a Consolidated List of Creditors In Lieu of a Matrix and (B) Filing of a Consolidated List of the Debtors' Thirty Largest Unsecured Creditors,* entered in these cases.

E.     The Debtors also gave due and proper notice of the assumption, sale, and assignment of each contract to be assumed and assigned under the Purchase Agreement (the

"**Assumed Contracts**") to each non-debtor party under each such Assumed Contract. Accordingly, no other or further notice of the Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts, or of the entry of this Order is necessary or shall be required.

## II.  Corporate Power, Authority and Ownership of the Assets

F.    The Debtors have full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the transactions contemplated by the Purchase Agreement. No consents or approvals, other than as may be expressly provided for in the Purchase Agreement, are required by the Debtors to consummate such transactions.

## III.  The Sale Process

G.    In order to maintain and preserve the Purchased Assets pending consummation of the Sale, the Purchaser and the Receiver, as predecessor fiduciary for the Debtors, entered into the Services Agreement under which the Purchaser would operate the Purchased Assets, be obligated to pay all expenses thereof (the "**Operating Expenses**") and be entitled to all proceeds generated through operation of the Purchased Assets.  The Services Agreement was approved pursuant to the Bid Procedures Order.  The Purchaser has operated the Purchased Assets through the date hereof and is expected to do so through the effective date of the Sale.

H.    As demonstrated on the record at the hearing on the Bid Procedures Order and the Sale Hearing, the Debtors (i) engaged in substantial marketing efforts with respect to the Purchased Assets beginning prior to the Petition Date, and (ii) upon the Committee's appointment, the Debtors consulted the Committee with respect to the Sale of the Purchased

Assets in an effort to ensure that the Committee found the terms of the Sale and the process acceptable to its constituents.

I.      The Debtors and their professionals have complied, in good faith, in all respects with the Bid Procedures Order. As demonstrated by (i) the evidence proffered at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing, thorough marketing efforts and a competitive sale process were conducted in accordance with the Bid Procedures Order, and the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtors' assets, (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets, and (iii) considered any bids submitted on or before the Bid Deadline.

J.      The Bid Procedures set forth in the Bid Procedures Order were non-collusive, proposed in good faith, and are substantively and procedurally fair to all parties-in-interest.

## IV.    **The Purchase Agreement**

K.      The Purchaser's offer, set forth in the Purchase Agreement and as amended hereby, provides for the sale and transfer of the Purchased Assets to the Purchaser. The offer of the Purchaser, upon the terms and conditions set forth in the Purchase Agreement and herein, including the form and total consideration to be realized by the Debtors pursuant to the Purchase Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Purchased Assets; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.

L.     The Debtors have demonstrated a sufficient basis and compelling circumstances to enter into the Purchase Agreement, sell the Purchased Assets and assume and assign the Assumed Contracts under Sections  363(b) and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors. Such business reasons include, but are not limited to, the facts that (i) the Debtors are not reorganizing their businesses; (ii) there is substantial risk of deterioration of the value of the Purchased Assets if the Sale is not consummated timely; (iii) the Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (iv) the Purchase Agreement and the Closing (as defined in the Purchase Agreement) will present the best opportunity to realize the value on a going concern basis and avoid decline and devaluation of the Purchased Assets; and (v) unless the sale is concluded expeditiously as provided for in the Sale Motion and pursuant to the Purchase Agreement, the estates' recoveries may be diminished.

M.     The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Sections 363(m) and (n) of the Bankruptcy Code with respect to all of the Purchased Assets.  The Purchase Agreement was negotiated and entered into in good faith and without collusion or fraud of any kind. Neither the Debtors nor the Purchaser have engaged in any conduct that would prevent the application of Section 363(m) or Section 363(n) of the Bankruptcy Code to the Purchase Agreement or to the consummation of the Sale transaction and transfer of the Purchased Assets, and the Assumed Contracts to the Purchaser. The Purchaser is entitled to all the protections and immunities of Section 363(m) of the Bankruptcy Code.  The Purchaser, which has operated the Purchased Assets on an interim basis, is demonstrated to be of sufficient wherewithal to effectuate the transactions contemplated by the Purchase Agreement.

N.       The terms and conditions of the Purchase Agreement, including the consideration to be realized by the Debtors pursuant to the Purchase Agreement, are fair and reasonable, and the transactions contemplated by the Purchase Agreement are in the best interests of the Debtors' estates.

O.       The Purchased Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of Section 541(a) of the Bankruptcy Code. As set forth in the Purchase Agreement, in Section 1 thereof, the Debtors are selling or assigning to the Purchaser as Purchased Assets the Debtors' rights in (each as defined in the Purchased Agreement) "ATM Contracts," "ATMs," "Non Active ATM Contracts," certain locks and certain other "Agreements" purchased by the Debtor in certain enumerated transactions.

P.       Except as otherwise provided in the Purchase Agreement or this Order, the Purchased Assets shall be sold free and clear of all mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, contracts, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, pension, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or the Debtors' predecessors or affiliates (as such term is defined by Section 101(2) of the Bankruptcy Code), claims (as that term is used in the Bankruptcy Code), reclamation

7

claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfilled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (collectively, **"Liens, Claims, Encumbrances and Interests"**) and the Purchaser would not enter into the Purchase Agreement to purchase the Purchased Assets otherwise.

Q.     The transfer of the Purchased Assets to the Purchaser is a legal, valid and effective transfer of the Purchased Assets, and, except as may otherwise be provided in the Purchase Agreement or this Order, shall vest the Purchaser with all right, title and interest of the Debtors to the Purchased Assets free and clear of any and all Liens, Claims, Encumbrances and Interests. Except as specifically provided in the Purchase Agreement or this Order, the Purchaser shall not assume or become liable for any Liens, Claims, Encumbrances and Interests relating to the Purchased Assets being sold by the Debtors.

R.     The transfer of the Purchased Assets to the Purchaser free and clear of all Liens, Claims, Encumbrances and Interests will not result in any undue burden or prejudice to any holders of any Liens, Claims, Encumbrances and Interests because such Liens, Claims, Encumbrances and Interests will attach to the sale proceeds wit hthe same validity, priority and enforceability as they had immediately before the closing. Except as provided for in the Purchase Agreement or this Order, all persons having Liens, Claims, Encumbrances or Interests of any

kind or nature whatsoever against or in any of the Debtors or the Purchased Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens, Claims, Encumbrances and Interests against the Purchaser, any of their assets, property, successors or assigns, or the Purchased Assets.

S.    The Debtors may sell the Purchased Assets free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever as set forth in the Purchase Agreement (and except as otherwise provided in this Order) because, in each case, one or more of the standards set forth in Section 363(f) of the Bankruptcy Code has been satisfied. All objections to the Sale Motion have been resolved or overruled.

T.    Not selling the Purchased Assets free and clear of all Liens, Claims, Interests and Encumbrances would adversely impact the Debtors' estates, and the sale of Purchased Assets other than one free and clear of all Liens, Claims, Interests and Encumbrances would be of substantially less value to the Debtors' estates.

## V.    The Assumed Contracts

U.    No section of any Assumed Contract which purports to prohibit, restrict, or condition the use, trade name or assignment of any such Assumed Contracts in connection with the proposed sale to the Purchaser shall have any force or effect.

V.    On September 23, 2010, Nassau Regional Off Track Betting Corporation ("**OTB**") filed an objection to the assumption of its contracts and the assignment thereof to FAM on the basis that such contracts (the "**OTB Contracts**") were terminated prior to the Petition Date (the "**OTB Objection**") [Docket No. 265].

W.    On September 23, 2010, Gourmet Heaven, Inc., 1450 Food Corp. d/b/a Café Duke, Andrew & Son, Inc., 791 Corp., Eden Foods, LLC, 325 H&M Food Corp., Sunny Gourmet

Grocery, Corp., East Village Farm Plus, Inc. and Christine, Inc. filed an objection through their counsel, Michael J. Kimm (collectively, the "**Kimm Parties**") to the assumption of their contracts and the assignment thereof to FAM on the basis that such contracts (the "**Kimm Contracts**") were terminated prior to the Petition Date (the "**Kimm Objection**") [Docket No. 269].

X.      On September 23, 2010 Young Ae Lee [Docket No. 277] and Ryung Cho [Docket No. 278] ("**Lee** and **Cho**") filed objections to the assumption of their contracts and the assignment thereof to FAM on the basis that such contracts (the "**Lee and Cho Contracts**") were terminated prior to the Petition Date (the "**Lee and Cho Objection**").[3]

Y.      Except with respect to the Objectors' Contracts, the Debtors and the Purchaser have, to the extent necessary, satisfied the requirements of Section 365 of the Bankruptcy Code, including Sections 365(b)(1)(A) and (B) and 365(f) of the Bankruptcy Code, in connection with the sale and the assumption and assignment to FAM of the Debtors' rights to the Assumed Contracts.  The Purchaser has demonstrated adequate assurance of future performance with respect to Debtors' rights to the Assumed Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code.  Except with respect to the Objectors' Contracts, the Debtors' rights to the Assumed Contracts are assignable notwithstanding any provisions contained therein to the contrary.  Except with respect to the Debtors' rights to the Objectors' Contracts, the Debtors have provided for the cure and/or other payment or action, if any, required to assume and assign the Debtors' rights to the Assumed Contracts to the Purchaser.  Except with respect to the Objectors' Contracts, the assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the

---

[3] OTB, the Kimm Parties, and Lee and Cho are collectively referred to as the "**Objectors**," and the OTB Contracts, the Kimm Contracts, and the Lee and Cho Contracts are referred to as the "**Objectors' Contracts**."

Debtors, their estates, their creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

Z.     With respect to the Debtors' rights to the Objectors' Contracts, as "Non Active ATM Contracts" as described in Section 1 of the Purchase Agreement, the Debtors are assuming and assigning to the Purchaser all the Debtors' rights in respect of each such contract as may exist in the Debtors, including, but not limited to, the right to enforce such contracts or pursue breach of contract actions or any other causes of action the Debtors may hold against the Objectors with respect to the Objectors' Contracts.  These rights include all applicable rights, such as may exist, under non-bankruptcy law to enforce the "Non Active ATM Contracts" in non-bankruptcy courts for purposes of the Debtors' performance of the Purchase Agreement.

AA.     The respective rights of (a) the Objectors, on the one hand, and (b) the Debtors (pre-Sale) and Purchaser (post-Sale) on the other hand, with respect to the "Non Active ATM Contracts" including the Objectors' Contracts, are further preserved including as follows.  The Objectors' rights to assert that the Objectors' Contracts were breached pre-petition are preserved; the Debtors' rights (which are to be assumed and assigned hereunder to the Purchaser) with respect to the Objectors' Contracts to assert any rights of the Debtors including for wrongful breach, to cure, for a determination that the Objectors' Contracts are not breached, and to assert any and all other causes of action relating to the condition of such contracts, are preserved.  No other treatment with respect to the Objectors' Contracts is necessary.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.     The relief requested in the Motion is granted in its entirety, subject to the terms and conditions contained herein.

2.      To the extent any objection, response or request for continuance was not otherwise withdrawn, waived or settled, or otherwise treated herein, it is overruled and denied.

3.      Notice of the Sale Hearing was fair and proper under the circumstances and complied in all respects with Section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

### *Approval of Sale*

4.      The Sale of the Purchased Assets, the terms and conditions of the Purchase Agreement, except as hereby amended, and the transactions contemplated thereby, be, and hereby are, authorized and approved in all respects.

5.      The Purchase Price shall be $925,000.00  The Purchaser, on behalf of the Debtors, shall transfer at Closing $75,000.00 of the Purchase Price to Eagle Express Systems Inc. ("**EES**") in full and complete satisfaction and resolution of EES's objection to the Sale and any other claims EES may hold against the Debtors only in connection with the Sale.[4]

6.      The sale of the Purchased Assets and the consideration provided by the Purchaser under the Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

7.      The Purchaser is hereby granted all of the protections provided to a good faith buyer under Sections 363(m) and (n) of the Bankruptcy Code, including with respect to the transfer of the Assumed Contracts, including, to the extent provided in the Purchase Agreement, the Non Active Contracts, as part of the Sale of the Purchased Assets pursuant to Section 365 of the Bankruptcy Code and this Order.

---

[4] EES may have claims against the Debtors' estates and the estates may have claims against EES other than in the context of the Sale of the Purchased Assets.  These other claims are not treated or prejudiced by this Order, which only resolves the ESS Objection to the Sale.

8.　　Pursuant to Sections 363(m) and (n) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the Purchase Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur shall be governed in all respects by the original provisions of this Order and the Purchase Agreement, as the case may be.

9.　　The Debtors are hereby authorized to fully assume, perform under, consummate and implement the terms of the Purchase Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Purchase Agreement, this Order and sale of the Purchased Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Purchased Assets or the Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Purchase Agreement, without any further corporate action or orders of this Bankruptcy Court.

10.　　The Debtors, the Purchaser, and each other person or entity having duties or responsibilities under the Purchase Agreement, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Purchase Agreement, to carry out all of the provisions of the Purchase Agreement and any related

agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Purchase Agreement, and any related agreements; to take any and all actions contemplated by the Purchase Agreement, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Purchase Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Bankruptcy Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities.

11. The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Purchase Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of

the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of New York, and all other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the implementation and consummation of the Purchase Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.

12. Effective as of the Closing Date, (a) the sale of the Purchased Assets by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any person and vests the Purchaser with all right, title and interest of the Debtors in and to the Purchased Assets, free and clear of all Claims, Liens, Interests and Encumbrances of any kind, except as otherwise provided in the Purchase Agreement or this Order, pursuant to Section 363(f) of the Bankruptcy Code; and (b) the assumption of certain assumed liabilities as set forth in Section 1.B of the Purchase Agreement (the "**Assumed Liabilities**") constitutes a legal, valid and effective delegation of the Assumed Liabilities to the Purchaser and divests the Debtors of all liability with respect thereto.

### *Transfer of Assets*

13. Except to the extent specifically provided in the Purchase Agreement, upon the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to Sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell the Purchased Assets to the Purchaser. Except as provided for in the Purchase Agreement or this Order, the Sale of the Purchased Assets vests the Purchaser with all right, title and interest of the Debtors to the Purchased Assets free and clear of any and all Claims, Liens, Interests and Encumbrances and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known

or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Claims, Liens, Interests and Encumbrances to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Purchased Assets, subject to all claims and defenses the Debtors may possess with respect thereto.  The Sale Motion shall be deemed to have provided sufficient notice of the sale of Purchased Assets free and clear of Claims, Liens, Interests and Encumbrances.  Except as provided for in the Purchase Agreement or this Order, following the Closing Date, no holder of any Claims, Liens, Interests and Encumbrances in the Purchased Assets may interfere with the Purchaser's use and enjoyment of the Purchased Assets based on or related to such Claims, Liens, Interests and Encumbrances, or any actions that the Debtors may take in their Chapter 11 cases, and no person may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Purchase Agreement or this Order.

14. The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Liens, Claims, Encumbrances and Interests and the Assumed Liabilities shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

15. On or before the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens, Claims, Encumbrances and Interests of any kind against the Purchased Assets, as such Liens, Claims, Encumbrances and Interests may have been recorded or may otherwise exist, except as otherwise provided in the Purchase Agreement or this Order.  If any person or entity that has

filed financing statements or other documents or agreements evidencing any Liens, Claims, Encumbrances and Interests in or against the Purchased Assets shall not have delivered to the Debtors prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims, Encumbrances and Interests that the person or entity has with respect to the Purchased Assets, the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets prior to the Closing, and the Purchaser is authorized to file such documents after Closing.

16.     All of the Debtors' interests in the Purchased Assets to be acquired by the Purchaser under the Purchase Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser.  Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets acquired by the Purchaser under the Purchase Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Purchaser.

17.     Except as otherwise expressly provided in the Purchase Agreement, all persons or entities presently or on or after the Closing Date in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

### *Assumed Contracts*

18.     Subject to the terms of the Purchase Agreement and the occurrence of the Closing Date, the assumption by the Debtors of the Assumed Contracts and the assignment of such

contracts to the Purchaser, as provided for in the Purchase Agreement, be, and hereby is, authorized and approved pursuant to Sections 363 and 365 of the Bankruptcy Code.

19.     The Assumed Contracts, which, pursuant to Section 1 of the Purchase Agreement, include but are not limited to the contracts identified in Exhibit A to the *Notice of Assumption and Assignment* filed herein [Docket No. 255], shall be deemed assumed by the Debtors and assigned to the Purchaser at the Closing, pursuant to Sections 363 and 365 of the Bankruptcy Code, subject only to the payment of all cure and/or other payment or action required to assume and assign the Assumed Contracts to the Purchaser pursuant to the Purchase Agreement.

20.     Upon the Closing, in accordance with Sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest of the Debtors in each Assumed Contract.  The Debtors shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

21.     The respective rights of (a) the Objectors, on the one hand, and (b) the Debtors (pre-Sale) and Purchaser (post-Sale) on the other hand, with respect to the "Non Active ATM Contracts," including the Objectors' Contracts, are further preserved including as follows.  The Objectors' rights to assert that the Objectors' Contracts were breached pre-petition are preserved; the Debtors' rights (which are to be assumed and assigned hereunder to the Purchaser) with respect to the Objectors' Contracts to assert any rights of the Debtors including for wrongful breach, to cure, for a determination that the Objectors' Contracts are not breached, and to assert any and all other causes of action relating to the condition of such contracts, are preserved.  No other treatment with respect to the Objectors' Contracts is necessary for purposes of the Debtors' performance of the Purchase Agreement.

22.     Pursuant to Sections 365(b)(1)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in this Order, the Purchaser shall promptly pay or cause to be paid from the proceeds of the Sale to the parties to any Assumed Contracts the requisite Cure Amounts, if any, set forth in the *Notice of Assumption and Assignment* filed herein [Docket No. 255], served by the Debtors on each of the parties to the Assumed Contracts, with respect to the assumption and assignment thereof. The Cure Amounts are hereby fixed at the amounts set forth in the Assumption and Assignment Notice served by the Debtors, or the amounts determined on the record of the Sale Hearing, as the case may be, subject to the terms of the *Notice of Assumption and Assignment*. The non-Debtor parties to the Assumed Contracts are forever bound by such Cure Amounts and are hereby enjoined from taking any action against the Purchaser or the Purchased Assets with respect to any claim for cure under any Assumed Contract.

23.     Except with respect to the Assumed Contracts that are the subject of the Objections (see paragraphs "V"-"2" and "21" above), all defaults or other obligations (except amounts owing that are not in default) under the Assumed Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Amounts and the non-debtor parties to such contracts shall be forever barred and estopped from asserting or claiming against the Debtors or the Purchaser that any additional amounts are due or other defaults exist.

24.     Any provision in any Assumed Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Assumed Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Amount, if any. No sections or provisions of any Assumed

Contract that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Contracts shall have any force and effect with respect to the transactions contemplated by the Purchase Agreement and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under Section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under Section 365(e) of the Bankruptcy Code and no assignment of any Assumed Contract pursuant to the terms of the Purchase Agreement in any respect constitutes a default under any Assumed Contract.

25.     The Purchaser has satisfied all requirements under Sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the Assumed Contracts.

26.     The Debtors and their estates are relieved of any liability for any breach of any of the Assumed Contracts occurring from and after Closing, pursuant to and in accordance with Section 365(k) of the Bankruptcy Code.

27.     The non-Debtor parties are prohibited from charging any acceleration, assignment fees, increases or other fees to the Purchaser as a result of the assumption and assignment of the Assumed Contracts.

### *Additional Provisions*

28.     Except as expressly set forth in the Purchase Agreement, on the Effective Date, the Debtors, their estates, and the Committee, and their respective affiliates, employees, representatives, agents, counsel, advisors, members, successors and assigns shall be unconditionally and irrevocably released by the Purchaser and/or its respective affiliates, employees, representatives, agents, counsel, advisors, successors and assigns from and against from any and all direct, indirect or derivative claims, obligations, suits, judgments, liens,

interests, damages, rights, causes of action, liabilities, claims or rights of contribution and indemnification, and all other controversies of every type, kind, nature, description or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence arising from or relating in any way, directly or indirectly, to the Debtors, their property, assets, operations or liabilities, and the Bankruptcy Cases, *only in respect of the Services Agreement, and the Sale of the Purchased Assets*. The parties acknowledge that the Purchaser may have claims against the Debtors' bankruptcy estates, and the estates may have claims against the Purchaser for matters or transactions other than with respect to the Services Agreement and the Sale of the Purchased Assets, all of which are unaffected by this Order.

29.     Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement and this Order.

30.     The Purchaser has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than any Assumed Liabilities and as otherwise set forth in the Purchase Agreement. Consequently, except as otherwise provided in the Purchase Agreement or this Order, all persons, Governmental Units (as defined in Sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Claims, Liens, Interests or Encumbrances based upon or arising out of  liabilities retained by the Debtors are hereby enjoined from taking any action against the Purchaser or the Purchased Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Claims, Liens, Interests or Encumbrances

or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Purchase Agreement.

31.     The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as otherwise expressly provided in the Purchase Agreement.  Except to the extent the Purchaser assumes the Assumed Liabilities pursuant to the Purchase Agreement, neither the purchase of the Purchased Assets by the Purchaser or its Affiliates, nor the fact that the Purchaser or their Affiliates are using any of the Purchased Assets previously operated by the Debtors, will cause the Purchaser or any of its Affiliates to be deemed a successor in any respect to the Debtors' businesses within the meaning of, or in connection with, (i) any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, antitrust, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), (ii) under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or  regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, (iii) any employment or labor agreements, collective bargaining agreements, consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtors are a party, (iv) any pension, health, welfare, compensation or other employee or retiree benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtors, (v) the cessation of the Debtor's operations, dismissal of employees,

or termination of employment or labor agreements, collective bargaining agreements, or pension, health, welfare, compensation or other employee or retiree benefit plans, agreements, practices and programs, and any obligations that might otherwise arise from any such cessation, dismissal or termination pursuant to any law of the United States, any State therein, or any other jurisdiction in the world, whether such obligations arise under any contract, agreement, statute, regulation, ordinance, common law, public policy, constitution or any other source, including without limitation, the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or the Worker Adjustment and Retraining Notification Act, (vi) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, et seq., (vii) any liabilities, debts or obligations of or required to be paid by, the Debtors for any taxes of any kind for any period, (viii) any liabilities, debts, commitments or obligations for any taxes relating to the operation of the Purchased Assets prior to Closing, and (ix) any litigation.

32.     Except to the extent expressly included in the Assumed Liabilities or otherwise provided in this Order, pursuant to Sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Debtors, the Committee, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other

creditors asserting or holding a Lien, Claim, Encumbrance and Interest of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Purchased Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien, Claim, Encumbrance and Interest, whether by payment, setoff, or otherwise, directly or indirectly, against the Purchaser or any Affiliates, successors or assigns thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, Affiliates, financial advisors and representatives (each of the foregoing in its individual capacity), or the Purchased Assets. For the avoidance of doubt, the foregoing shall not prevent the Debtors, their estates, successors or permitted assigns from pursuing claims, if any, against the Purchaser and/or its successors and assigns in accordance with the terms hereof and/or of the Purchase Agreement.

33.     Other than the Assumed Liabilities, the Purchaser shall have no obligations with respect to any liabilities of the Debtors, and the Debtors are deemed to release and forever discharge the Purchaser and any of its Affiliates, successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs  and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the sale, except for liabilities and obligations under the Purchase Agreement.

34.     Nothing in this Order or the Purchase Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or

regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order or the Purchase Agreement authorizes the transfer or assignment to Purchaser of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without Purchaser's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

35. Subject to the terms of the Purchase Agreement, the Purchase Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Bankruptcy Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Purchase Agreement and any related agreements.

36. The failure specifically to include any particular provisions of the Purchase Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, the Debtors and the Purchaser that the Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

37. To the extent any provisions of this Order conflict with the terms and conditions of the Purchase Agreement, this Order shall govern and control.

38. This Order and Purchase Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if this case is converted from Chapter 11, all creditors of any Debtor (whether known or unknown),

filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets.

39.     The provisions of this Order are non-severable and mutually dependent.

40.     The Purchaser shall cooperate with the estates of the Debtors from and after the Closing with respect to the exchange of books, records and documents that may be necessary for estate administration.

41.     The Services Agreement is approved in all respects and terminated as of the Closing.

42.     In accordance with the terms of the Services Agreement, the Purchaser shall pay all Operating Expenses as of the effective date of the Sale and shall hold the Debtors, including NowCash, harmless and shall indemnify the Debtors, including NowCash, for any and all Operating Expenses incurred through and including the effective date of the Sale.

43.     Pursuant to the terms of the escrow agreement (the "**Escrow Agreement**") by and between the Debtors and FAM, upon Closing, the Escrow Agent thereunder (the "**Escrow Agent**") shall release the deposit from the Purchaser to the Debtors.  The Escrow Agent and all parties to the Escrow Agreement are directed to comply with the terms thereof, which were approved by this Court under the Bid Procedures Order.

44.     This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bid Procedures Order, and the Purchase Agreement in all respects and to decide any disputes concerning this Order and the Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Purchase Agreement and this

Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Assumed Contracts and Assumed Leases and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of all Liens, Claims, Interests and Encumbrances.

45.     The stay of orders authorizing the use, sale or lease of property as provided in Bankruptcy Rule 6004(h) shall not apply to this Order, and this Order is immediately effective and enforceable.

Dated:   White Plains, New York
         December 6, 2010

                                        /s/ Robert D. Drain
                                        ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE